Marvin S. Gittes (MG-6112)
Timur E. Slonim (TS-0915)
**MINTZ, LEVIN, COHN, FERRIS,**
  **GLOVSKY and POPEO, P.C**.
666 Third Avenue
New York, New York 10017
Tel.:  (212) 935-3000
Fax:  (212) 983-3115
Email: mgittes@mintz.com
        tslonim@mintz.com

*Attorneys For Hampton Court Jewelers Ltd. d/b/a Cellini Fine Jewelry*



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
THE FRANK LLOYD WRIGHT FOUNDATION,  :
an Arizona not-for-profit corporation,

Plaintiff,                                       :

        v.                                       :

                                                 :        08 CV 00422 (NRB)

HAMPTON COURT JEWELERS LTD.              :        **THIRD PARTY COMPLAINT**
d/b/a CELLINI FINE JEWELRY, a New York
domestic business corporation,           :        **DEMAND FOR JURY TRIAL**

Defendant.                               :
------------------------------------------------------------ X
HAMPTON COURT JEWELERS LTD.              :
d/b/a CELLINI FINE JEWELRY, a New York
domestic business corporation,           :

Third Party Plaintiff,                   :

        v.                                       :

                                                 :
BAGUÉS-MASRIERA, S.A., a                 :
corporation domiciled in Spain,

Third Party Defendant.                   :
------------------------------------------------------------ X

### HAMPTON COURT JEWELERS LTD.'S
### THIRD PARTY COMPLAINT AGAINST BAGUÉS-MASRIERA S.A.

Pursuant to impleader under Fed. R. Civ. P. § 14(a), Hampton Court Jewelers Ltd. d/b/a Cellini Fine Jewelry ("Cellini"), by its attorneys Mintz Levin Cohn Ferris Glovsky & Popeo, P.C., for its Third Party Complaint against Third Party Defendant Bagués-Masriera S.A. ("Bagués") hereby states as follows:

## NATURE OF THE ACTION

1.    Cellini's claims against Bagués arise from Bagués' manufacture and sale to Cellini of fine jewelry which Plaintiff The Frank Lloyd Wright Foundation (the "FLWF") accused of, *inter alia*, trademark and copyright infringement.  They are for breach of the implied warranty of title and against infringement under N.Y.U.C.C. § 2-312 and common law, breach of obligations under Article 42 of The United Nations Convention On Contracts for the International Sale of Goods, indemnification, contribution, and impleader pursuant to Federal Rule of Civil Procedure 14(a).

## THE PARTIES

2.    Cellini is a New York domestic business corporation with its principal place of business at 301 Park Avenue, New York, New York.  Cellini is a fine jewelry retailer.

3.    Upon information and belief, Bagués is a Spanish corporation headquartered at Consell de Cent, 331 pral., Barcelona, Spain 08007.

4.    Bagués designs, sells and distributes fine jewelry to customers throughout the United States, including to customers located in New York.  According to its website, Bagués maintains an office in the United States at 34522 North Scottsdale Road, Suite 630, Scottsdale, Arizona from which it "manag[es] sales outlets located in the most prestigious jewelleries [sic]" in the United States.  (Ex. A).

5.    Bagués owns the domain name and operates the website www.masriera.com, through which it promotes its fine jewelry collections.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7.    This Court has jurisdiction pursuant to 28 U.S.C. § 1367 because the claims alleged herein are so related to the underlying action entitled The Frank Lloyd Wright Foundation v. Hampton Court Jewelers Ltd. d/b/a Cellini Fine Jewelry, No. 08 CV 00422, filed in this Court on January 16, 2008, that they form part of the same case or controversy.

8.    This court has jurisdiction over Bagués pursuant to NY C.P.L.R. § 302 because Bagués transacted business in New York and the claims giving rise to this action relate to that business; Bagués contracted to supply fine jewelry in New York, and Bagués has committed a tort within New York State.

9.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTS

10.    Upon information and belief Bagués has been in the business of creating, designing, and selling fine jewelry for over 100 years.

11.    Bagués has been, and continues to be, designing and selling fine jewelry, in what it refers to as the "art deco" and "art nouveau" styles.

12.    Upon information and belief, at least as early as 1997, Bagués began selling, and is currently selling, a line of fine jewelry in the "art deco" style that it calls the Vitralls

Collection.  On its own web site, Bagués refers to the Vitralls Collection as "memorable."  (Ex. B).

13.    In the book, entitled <u>Masriera Jewellery [sic], 200 Years of History</u>, published by Ambit Serveis Editorials in Barcelona in 1999, the author Pilar Velez who wrote the book at the invitation of the Oliveras Bagues family "after intense research in the Bagues Masriera Archives, thanks to the great kindness of Joan, Jordi and Oriol Oliveras i Bagues [majority owners of Bagués])," described the Vitralls Collection as being "dedicated to Frank Lloyd Wright."  (Ex. C).

14.    Upon information and belief, Bagués advertised, marketed and offered for sale jewelry from its Vitralls Collection in the United States.

15.    Upon information and belief, Bagués is currently a corporate sponsor and a member of the Corporate Patron Program of the Metropolitan Museum of Fine Art in New York, New York.

16.    Bagués participated in a jewelry tradeshow entitled JCK Las Vegas in Las Vegas, Nevada on or about May 30 - June 2, 2006 at which its representatives marketed the Vitralls Collection to potential customers, including Cellini. At the Las Vegas show, Bagués representatives told Cellini that the Vitralls Collection was inspired by Frank Lloyd Wright.

17.    Between June 2006 and December 2006, Cellini purchased from Bagués fine jewelry from the Vitralls Collection.

18.    Bagués shipped all orders placed by Cellini to Cellini retail stores located at 301 Park Avenue or 509 Madison Avenue in New York, New York.

19.     On or about December 4, 2006, the FLWF sent a letter to Cellini informing Cellini that the accused jewelry from Bagués' Vitralls Collection, *inter alia*, allegedly infringes trademarks and copyrights owned by the FLWF.

20.     Cellini duly notified Bagués of the claims by the FLWF.  Discussions ensued between the FLWF and Cellini, through its counsel. Additionally, discussions between Cellini and Bagués were also initiated.

21.     On January 16, 2008, the FLWF filed Civil Action No 08-CV-00422 entitled *The Frank Lloyd Wright Foundation v. Hampton Court Jewelers Ltd. d/b/a Cellini Fine Jewelry* (the "Civil Action").  A copy of the FLWF's Complaint is attached hereto.  (Ex. D).

22.     In the Civil Action, the FLWF alleges, *inter alia*, that the fine jewelry that Cellini purchased from Bagués infringes the FLWF's trademarks and copyrights.

23.     The FLWF had advised Cellini on December 21, 2006, prior to filing the Civil Action, that it was withdrawing its copyright infringement claims.  However, in the Civil Action, the FLWF re-asserted a copyright infringement claim.

24.     On or about February 27, 2008, Cellini notified Bagués that it received, *inter alia*, claims of trademark and copyright infringement from the FLWF, provided it with a copy of the Complaint, and requested that Bagués defend and indemnify Cellini in connection with the FLWF's trademark and copyright infringement claims.

25.     To date Bagués has not agreed to provide indemnification, contribution or honor its warranties of title and against infringement, and there are no indications that it will do so in the future.

26.     Cellini has incurred and expects to continue to incur significant attorneys' fees and costs defending against the FLWF's infringement allegations in the Civil Action.

### COUNT I– Breach of Implied Warranty of Title and Against Infringement

27.     Cellini repeats and incorporates by reference each and every allegation set forth in Paragraphs 1 through 26, above.

28.     Bagués is a merchant regularly dealing in, designing, manufacturing, selling, and distributing fine jewelry.

29.     Bagues sold the accused fine jewelry that is the subject of the Civil Action to Cellini.

30.     Since Bagués warranted title to the fine jewelry it sold to Cellini to be free from claims of infringement, the FLWF's infringement allegations in the Civil Action impair Cellini's title to the accused fine jewelry from Bagués Vitralls Collection.

31.     Bagues did not exclude or disclaim any implied or express warranties owed to Cellini, including the warranty of title and against infringement.

32.     Cellini did not design or manufacture the fine jewelry included in the Vitralls Collection.

33.     On information and belief, Bagués had not procured the FLWF's permission for the sale of the Vitralls Collection when it sold the pieces from the Virtralls Collection to Cellini.

34.     Bagués breached its warranty of title and against infringement under N.Y.U.C.C. § 2-312 and common law and is liable to Cellini for such damages, fees and costs Cellini incurs in defending the accused fine jewelry from Bagués' Vitralls Collection against the allegations contained in the Civil Action.

35.     Bagués' breach of warranty of title and against infringement has caused Cellini to sustain monetary damages, loss and injury in amounts to be determined at trial, including

attorneys' fee and expenses in defending the Civil Action and prosecuting this third party action, and Bagués is liable therefore.

## COUNT II - Breach of Obligations Under The United Nations Convention On Contracts for the International Sale of Goods

36.    Cellini repeats and incorporates by reference each and every allegation set forth in paragraphs 1 through 35, above.

37.    The United Nations Convention On Contracts for the International Sale of Goods (the "Convention") applies to the sales of fine jewelry from Bagués to Cellini that are the subject of the Civil Action since their respective places of business are in Spain and the United States of America, both of which have ratified the Convention.

38.    Bagues did not exclude or disclaim any implied or express obligations of the sellers under the Convention, including the warranty against infringement.

39.    Cellini did not design or manufacture the fine jewelry included in the Vitralls Collection.

40.    On information and belief, Bagués had not procured the FLWF's permission for the sale of the Vitralls Collection when it sold the pieces from the Virtralls Collection to Cellini.

41.    The FLWF filed the Civil Action against Cellini and alleges that the fine jewelry that Cellini purchased from Bagués infringes, *inter alia*, the FLWF's trademarks and copyrights.

42.    Bagués as the seller breached its obligation under Article 42 of the Convention that the "seller must deliver goods which are free from any right or claim of a third party based on industrial property or other intellectual property, of which at the time of the conclusion of the contract the seller knew or could not have been unaware …." Bagués is liable to Cellini for such damages, fees and costs Cellini incurs in defending the accused fine jewelry from Bagués' Vitralls Collection against the allegations contained in the Civil Action.

-7-

43.     Bagués' breach of its obligations as the seller under Article 42 of the Convention has caused Cellini to sustain monetary damages, loss and injury in amounts to be determined at trial, including attorneys' fees and expenses in defending the Civil Action and prosecuting this third party action, and Bagués is liable therefore.

### COUNT III - Indemnification / Contribution

44.     Cellini repeats and incorporates by reference each and every allegation set forth in paragraphs 1 through 43, above.

45.     Attached as Exhibit E is Cellini's Answer from the Civil Action.  The FLWF's Complaint (Ex. D) and Cellini's Answer are incorporated by reference herein.

46.     On information and belief, Bagués, or those under its control, designed, manufactured, sold, and distributed the pieces in the Vitralls Collection which form the basis of the FLWF's claims.

47.     Cellini is entitled to indemnification and contribution from Bagués since Bagués is the party which designed, manufactured, sold, and distributed the alleged infringing fine jewelry, which it warranted to be free from claims of infringement.

WHEREFORE,  Cellini requests that this Court enter judgment in its favor and against Bagués as follows:

A.     Award Cellini damages, fees or costs incurred or suffered by Cellini as a result of Bagués having delivered goods to Cellini that were not free of claims of infringement by any third person, including any adverse judgment or settlement, any attorneys' fees, and any costs incurred by Cellini in having to defend itself against the claims alleged in the Civil Action and to prosecute this third-party action; and

B.     Award Cellini such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Cellini hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
      April 3, 2008

**MINTZ LEVIN COHEN FERRIS
GLOVSKY AND POPEO, P.C.,**

By: _____
     Marvin S. Gittes (MG-6112)
     Timur E. Slonim (TS-0915)
     The Chrysler Center
     666 Third Avenue
     New York, New York 10017
     Tel.:  (212) 935-3000
     Fax:  (212) 983-3115

     *Counsel for Defendant and Third
     Party Plaintiff Hampton Court
     Jewelers Ltd. d/b/a Cellini Fine
     Jewelry*

*OF COUNSEL:*

Geri L. Haight, Esq.
Mintz, Levin, Cohn,
Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA  02111
Tel.:    (617) 542-6000
Fax:    (617) 542-2241

**Exhibit A**



*Contact*

**HEADQUARTERS**
Consell de Cent, 331 pral.
08007 Barcelona
Phone: + 34 93 481 70 54
Fax: + 34 93 302 49 30
info@masriera.es

**FLAGSHIP STORE**
Passeig de Gràcia, 41
08007 Barcelona
Phone: + 34 93 216 01 74
Fax: + 34 93 487 70 01
info@masriera.es

**UNITED STATES**
US Offices
34522 North Scottsdale Road,
Suite 630
Scottsdale AZ, 85262
Phone: + 800 472 9872
Fax: + 480 538 0674
jjjmeli1@msn.com

**JAPAN**
Official Distributor for Japan
K.K. KRASSONS
YAINO BLDG. 4th Floor
1-19-1 HIGASHI UENO
TAITO-KU, TOKYO 110 (Japan)
Phone: + 81 3 3836 1186
Fax: + 81 3 3836 0679

MASRIERA



Exhibit B



PROFESSIONAL AREA    CONTACT

BAGUÉS-MASRIERA, MORE THAN 200 YEARS OF HISTORY IN JEWELLERY AND SILVERSMITHING.

The Company
HISTORY
  Beginnings
  Renovation
  > Expansion
PRIZES
  Prizes
  Exhibitions
LOCATION

Creative process

Art Nouveau

Highlights

2008 Collection

### Affirmation of continuity and future

In 1985, two historical Catalan jewellery firms were to merge: *Masriera i Carreras* (a company born in 1915) and Bagués, both with a long prestigious history of creativity and solidity.

Founded in 1917, Bagués is outstanding for its collections of contemporary jewels of Mediterranean inspiration. The Mediterranean can be seen in the colours, the designs and the elegant austerity of collections as memorable as *Vitralls*, *Ceràmica i Mosaic* (*Stained glass*, *Ceramics* or *Mosaic*), among many others. They can also be highlighted for their close connection to the city of Barcelona, their strong conviction that a jewel must be a language of artistic expression with clear cultural roots, and their reinterpretation of the techniques used by *Art Nouveau* Catalan jewellers with a new language. Research into enamelling being one of the inseparable features of the

MASRIERA

Exhibit C

PILAR·VÉLEZ

# MASRIERA *jewellery*

## 200 YEARS OF HISTORY

àmbit

Published: 1999

© Àmbit Serveis Editorials, S.A.
Joieria Bagués, S.A.

© of the text, Pilar Vélez

© of the photograhs, Miquel Casanelles,
Joieria Bagués, S.A.

Translation fron the Catalan:
Elaine Fradley

Photographs:
Miquel Casanelles

Photographs loaned by:
Abadia de Montserrat (pgs. 122)
Arxiu Històric de la Ciutat (pgs. 18, 33, 136)
Biblioteca de Catalunya (pgs. 19, 34, 50)
Museu Nacional d'Art de Catalunya.
Drawings and Engravings Section (pgs. 59)

Graphic design:
Natàlia Arranz

Created and produced by Àmbit Serveis Editorials.
All rights reserved. No part of this publication may be
reproduced in any form or by any means without due
authorisation.

Legal deposit: B-36658-1999
ISBN: 84-89681-33-3

ÀMBIT SERVEIS EDITORIALS, S. A.
Consell de Cent 282, ent. 2a. - Tel. 93 488 13 42
08007 Barcelona

Printed in Barcelona

and in the United States.[2] By way of example, we could mention the most representative: the outstanding catalogue of a major donation, *The Art of the Jeweller. A catalogue of the Hull Grundy Gift to the British Museum I-II*,[3] handed over in 1978, though it only includes one piece by Lluís Masriera, a bird-shaped pin;[4] Vivienne Becker's broader study, *Art Nouveau Jewelry*,[5] where the only Spanish jeweller to be mentioned is Lluís Masriera;[6] by the same author, *Antique and Twentieth Century Jewellery (A guide for collectors)*,[7] which merely mentions Lluís Masriera in passing;[8] the book by Charlotte Gere and Geoffrey C. Munn, *Artists' Jewellery Pre-Raphaelite to Arts and Crafts*,[9] where the merger with the Carreras family is also briefly mentioned;[10] also in the same collection, written by David Bennett and Daniela Mascetti, is *Understanding Jewellery*,[11] a book which features Masriera as a mere disciple of Lalique;[12] *Jewelry & Metalwork in the Arts & Crafts Tradition*,[13] by Elyse Zorn Karlin, which only briefly mentions Masriera;[14] a very recent publication, *Le bijou Art Nouveau en Europe*,[15] a work coordinated by Rolende van Strydonck de Burkel with text by Jacqueline Francotte-Florence, which is the most complete of all those listed here, as, despite being aimed at a general public, it includes most of the names in jewellery at that time from the length and breadth of Europe (Masriera is given considerable space and six of his pieces are reproduced,[16] one in large format as the sole motif of the book jacket); and finally another recent work, *Dictionnaire International du Bijou*,[17] where we find the entry "Masriera".[18] Nonetheless, when we weigh up this type of bibliography, we see how when Lluís Masriera comes under the pen, it is as though he were a disciple or imitator of Lalique, whereas the reality is quite different, as we will see in the course of the following pages. While it is true that Lalique's work made a profound impression on Masriera in 1900, when he saw it at the International Exhibition in Paris, the Catalan jeweller never had any kind of personal relationship with or dependence on him; if his work does have anything in common with that of Lalique, it is because he was already cultivating a very similar art, both conceptually and artistically. More than a mere follower or admirer of the French artist, Lluís Masriera was indubitably the great jeweller of Catalan Modernism.

To return to the Masriera family, with the exception of Lluís, I know of no other story of XIX century jewellery in Europe which includes Josep Masriera i Vidal or Josep Masriera i Manovens, grandfather and father respectively of Lluís Masriera. This type of bibliography therefore only provides an absolutely biased look at the Masriera jewellers, one which is very much lacking in attention to any period other than Modernism. There is an exception, albeit aimed at the general public: this is the only book to date to deal with the history of Catalan jewellery and metal working. I refer to *Argenters i joiers*

*de Catalunya,*[19] in which Núria de Dalmases deals with the guilds phase and Daniel Giralt-Miracle with the post-guilds phase; the latter is therefore the author of the lines devoted to the Masriera family, following the general style of bibliography published up until then.

Yet while the Masriera family's jewellery and silver work goes back for decades before Modernism, it also continues today. This is why, when the Oliveras Bagués family, together with Editorial Àmbit, proposed that I write this book, we considered that we should go beyond Lluís Masriera to investigate his predecessors as well as the development of the firm behind its -hitherto- one major protagonist. The Masriera family was destined to merge with another great and even older name in XIX century jewellery, the Carreras family, and another family of jewellers, the Bagués, also renowned in Barcelona and to some extent the successor of other families of jewellers and watchmakers of the eighteen-hundreds, was to eventually acquire this rich, valuable artistic and documentary heritage, almost unique in Europe, for it is very unusual to find anything like it in other European cities.

I consulted the important archives of Modernist projects, where I had worked on several occasions years ago during the organisation of some of the above-mentioned exhibitions; I consulted the collection of moulds and casts, and the files of documents and designs corresponding to before and after Modernism, never publicised before this study; one summer afternoon, Jordi Oliveras and I unearthed it from an attic in the former Masriera workshops which still work for the Bagués Group today. All of this has given me a clear insight into the running of their successive companies. By analysing these files, I have been able to recreate the story surrounding the name Masriera, both as regards technical and artistic aspects, and socio-cultural issues, by seeing who their clients, their suppliers and collaborators were, how work was organised in the workshops, what kind of commissions they received and how they went about them, and so on.

From the late eighteen-fifties up until the present day, practically all the accounts ledgers, books of commissions with corresponding sketches, the volumes of balance sheets and inventories, the books of collaborating workshops and the current accounts of the various members of the companies have been conserved, along with many more documents, including deeds, a few family wills and contracts, forming quite an appreciable body of documentation. Apart from its sheer volume, it is also important for the fact that it has been conserved in its entirety up until the present day, which is quite impressive if we bear in mind the vicissitudes which the Masriera family have undergone in over a hundred and fifty years. This vast quantity of material has been conserved, dealing with the Masriera and the

Carreras families —even before they merged—, as well as the Bagués family, allowing me to introduce new aspects to the stereotypical classification of Lluís Masriera, who has often been portrayed as an artist, a jeweller almost by chance, like a mushroom that springs up over night. In fact, when he was born, his grandfather had passed his master craftsman's exam almost thirty-five years previously, and was running one of the foremost jeweller's shops in all of Spain. Then, after dealing with Lluís Masriera, although with a more summarised approach, as the firm ceased to occupy its leading role in the world of so-called artists' jewellery in which he had been a prime mover, I document the developments leading up to the acquisition of Masriera i Carreras by Bagués, with the attendant boon to the publicising and study of the firm.

Life has its little ironies. I should like to very briefly tell a story here: when I was in my fourth year of History of Art at the University of Barcelona and interested in jewellery ––Modernist, of course, because at that age we were all wild about Modernism––, I had to choose a topic for my graduate thesis and I plumped for the Masriera family. I was told that there were two people who had been working on the subject for some time and also that it was very difficult to get access to the holdings, which were in the hands of the Carreras family at the time. So in the end I devoted my thesis to the graphic arts, a field which, like jewellery, was lumped together with all those arts for which the traditional history of art had little regard.[20] Years later, still guided by my particular interest in these many arts —decorative, graphic, applied, whatever you like to call them—, I was lucky enough to take part in organising some of the exhibitions I mentioned earlier. The Masriera holdings were by now in the hands of the Bagués family, and finally accessible to me with no obstacles. As a result of my collaboration on a variety of projects in which their pieces were required, I looked at and started to study the holdings, to the point that today, it is now possible for me to write this book after intense research in the Bagués Masriera Archives, thanks to the great kindness of Joan, Jordi and Oriol Oliveras i Bagués.

The main subject of this book is the Masriera family, jewellers from 1838 until the present day. In view of the fact that it was necessary to combine a general tone with a great many facts and documentary sources, I have tried to make it easy to read by including a lot of footnotes, so that anyone who is interested in knowing more about a particular subject or finding out the source of a certain piece of information can satisfy their curiosity. A basic bibliography is included in the annexe by way of a complement, in addition to the specific bibliography devoted to the world of the visual arts, covering Josep and Frederic Masriera i Manovens, and Lluís Masriera i Rosés.

# ACKNOWLEDGEMENTS

efore going on to the text proper, I should like to thank a series of people; first of all the Oliveras Bagués brothers, who not only lent me their archives, but who have also rendered me many services in the course of my research. We have spent many pleasant hours working on them together. Secondly, all the staff of the Bagués Group who have helped to make this book possible, and also Mariona Bagués i Rovira and Josep Rovira i Güell, for their friendly conversation; the Masriera Escolà family, and particularly José Manuel Masriera and Rosario Masriera, for information and their kindness in allowing us to reproduce some of the family's works and certain photographs. My thanks also to Manuel Rovira, Glòria Porrini, Eloïsa Sendra and Sebastià Riera, at the Arxiu Històric de la Ciutat, and to Francesc Fontbona, at the Biblioteca de Catalunya, for their generous, on-going collaboration in allowing me to consult and reproduce their respective holdings; also to Teresa Macià and Josep de C. Laplana, at the Museu de Montserrat, and Victòria Durá, at the Reial Acadèmia Catalana de Belles Arts de Sant Jordi, for their collaboration; finally, to Núria Moré, Josafat Coromina, Mercè Rodríguez and Teresa Pujol, for letting us reproduce their pieces, which are a major contribution to the book; and the author of the photographs, Miquel Casanelles, whose work everyone can appreciate. And to close, to Arnau, who used to lend a hand on some summer mornings at the Bagués Masriera Archives, and Jordi, to whom, by way of correspondence, I would like to dedicate this book.

## THE RECOVERY OF THE MASRIERA HOLDINGS AND THE NEW BAGUÉS LINE

The Bagués firm specialised in what is known internationally as high-class jewellery — working with stones; the best example of this were the Casa Amatller premises at 41, Passeig de Gràcia. It was much in demand and feted by the Barcelona bourgeoisie, leading to a further extension of business. In 1969, Narcís and Amadeu Bagués acquired fifty per cent of the shares in Masriera i Carreras. This was the first step leading to the acquisition by the Bagués family of this firm in its entirety in 1985, allowing the recovery of the Masriera holdings, which had practically fallen into oblivion. The Masriera and Carreras families had completely disappeared from the world of jewellery, but the Bagués now became their heirs, retrieving their collection of moulds, casts, designs and all manner of useful documentation which had been perfectly —and unusually— conserved, and for the time being maintained the name of Masriera i Carreras for the premises at 26, Passeig de Gràcia.[7]

Amadeu Bagués died in 1981.[8] His brother Narcís had died in 1976. Amadeu had been a bachelor, while Narcís was married to Àngela Rovira i Güell (1906), with whom he had just one daughter, Mariona Bagués Rovira (1930). A brother of Àngela Rovira, Josep Rovira i Güell (1915), worked for fifty-four years with the Bagués firm, starting very young on the administration side and later becoming responsible for client attention.

During this phase, one large-scale piece in the field of silver working should be mentioned: the Montserrat and Sant Jordi chest[9] created by the Bagués workshops in silver with appliqués in enamel, ivory and a variety of stones —agates, chalcedony,…—, with the collaboration of the sculptor Josep M. Soldevila. In terms of iconography, it was a synthesis of the spiritual traditions of Catalonia, and from an artistic point of view it represented the new trends in gold- and silversmithing of the early sixties.

The hand-over from the first to the third Bagués generation was very rapid. The sons of Mariona Bagués and Joan Oliveras i Farrús (1925), Joan (1957), Jordi (1961) and Oriol Oliveras i Bagués (1967) are now the directors of Bagués Joieria, and have done a great deal to publicise the Masriera holdings by recreating pieces using their large collection of moulds, casts and designs, loaning them for exhibitions all over the world and allowing scholars access to them to record their history with due precision.

Joan and Jordi Oliveras have also created two



Necklace, an example of high-
class jewellery, in gold and
emeralds, very representative
of the Bagués creations of the
sixties.
BM Collection.





Articulated pin in platinum
and diamonds.
c. 1960.
BM Collection.

Bagués lines: the Bagués Classics, jewellery incorporating stones along the firm's traditional lines, though with greater restraint and austerity, and the Bagués Collection, up-to-date designs where colour plays a major role, in the form of both the metals used —red, yellow and white gold, silver and platinum with a variety of finishes (textured using sand or hammering,…)—, the stones (onyx, bloodstone, lapis lazuli,…) and, above all, enamel.

The Oliveras Bagués have gradually merged the two lines to produce jewellery in which design comes together with the latest in technology and a return to old techniques. One of its most singular characteristics is undoubtedly the use they have made in their pieces of enamel since the late eighties. To some extent influenced by their analysis of the Masriera pieces, then

moved by the desire to create artists' jewellery in the field closest to what is understood to be high-class jewellery, today the Bagués workshops are internationally renowned for their enamel creation. And not just as regards the creation of new pieces, but also with the conservation and restoration of the Art Nouveau jewels which are entrusted to them by the many institutions all over Europe to collect this type of heritage. This use of enamel in the contemporary jewellery world is one of the most important contributions of the Bagués firm.

When speaking of contemporary jewellery, one of the basic aspects is the priority of the design of the piece over and above its prestige or social value, beyond the traditional function of a piece of jewellery, and the present-day criteria of the Bagués is absolutely in keeping with this trend. It is true that the world of jewellery was visibly affected by the socio-cultural revolution of the sixties and seventies in the Western world, which reached all spheres. Like in many other artistic manifestations, after an initial phase of turn-around, rejection of tradition, the introduction of new materials and the abolition of social standardisation —which certainly produced some very interesting creations—, once the first effects of the revolution had died down the initial idea gradually adapted to new socio-artistic parameters; other channels then opened up, other paths

Necklace of chalcedony,
diamonds, *plique-à-jour*
enamel and gold. 1990.
BM Collection

Bracelet, ring and earrings in gold, translucent and opaque enamel, rock crystal and diamonds from the collection *Vitralls* dedicated to Frank Lloyd Wright". 1997. BM Collection.







which, alongside the initial breakaway, have led to new types of creation. As a result, alongside the unique piece, created with materials which are rather foreign to the traditional world of jewellery, mass-produced designer jewellery, generally in silver, has emerged, as well as —and this is where the Oliveras Bagués play a major role— jewellery seen as design, using the materials according to design but without ruling out the use of precious metals and gems. The Oliveras Bagués are, then, a good exponent of the trajectory of contemporary jewellery —that is,

the incorporation of design to high-class jewellery. The teachings of the Masrieras, with which they have had close contact, have evidently influenced them a great deal in their desire to address the concept of artists' jewellery.

And that is not all. In 1986, they also created the biannual Bagués Prize for young jewellers, one of the foremost prizes in all Spain,[10] which was organised four times. Today, the Bagués-Masriera firm, based in the historical establishment of El Regulador, with its recently restored shop at 41, Passeig de Gràcia, reaches not only Europe and the United States, but also Japan, and is highly considered on the international scene.

All in all, the present-day firm, Bagués-Masriera —dating back to 1766 when Francesc Carreras i Mata set up shop as a jeweller in Barcelona and continuing when Josep Masriera i Vidal sat his *passantia* examination on 27 January 1838, through the merger of the two names in 1915—, continues to thrive now, on the threshold of the year 2000, two hundred and thirty-two years later. We can quite safely say that it is the only firm in the world of jewellery and silver working in all of Spain—and one of the very few in all Europe— which can boast a history of almost two and a half centuries, in the form of family businesses and other, more complex formations.

NOTES

1 This information is taken from the "Barcelona establishments" page devoted to El Regulador in *La Actualidad* (Barcelona), issue 256, 27 June 1911, no page number.

2 As of 1889, the Council awarded a prize to the best building and, after 1902, another prize to the best commercial building. See Oriol Bohigas, "Los premios de Arquitectura y Decoración. Los premios FAD y los Antiguos Premios del Ayuntamiento", *Revista* (Barcelona), June 1959.

3 Other prize winners were the Casarramona factory in Carrer Mèxic, by the architect Josep Puig i Cadafalch, and the Cafè Restaurant Royal on La Rambla, the work of the decorator Jaume Longueras.

4 The documents about these two new businesses are conserved in the BM Archives.

5 Where the protagonist of the novel *Mirall trencat* by Mercè Rodoreda goes with his wife to buy her the best jewel in the world, and is attended by the proprietor of the Begú jeweller's shop, Mr. Begú; this is the fictional name of Narcís Bagués, friend of the writer, who turns him into one of the characters in chapter one of the novel.

6 Amadeu Bagués was a good friend, for example, of the sculptor and great collector, Frederic Marès i Deulovol (1893-1991), with whom, along with other friends, he went on a holiday which was immortalised by F. Marès himself in the book *Els Robinson dels llacs de colomers*, Barcelona, 1950.

7 Some accounts ledgers and books of drawings and photographs of pieces of the Carreras firm have also been conserved, and also form part of the BM archives today.

8 His importance as a citizen led to Barcelona City Council naming a street after him in 1996; Passatge Amadeu Bagués leads from La Rambla to Carrer Cardinal Casañas, very close to El Regulador.

9 Today this chest, from the Riera collection, forms part of the heritage of the Generalitat (Catalan Government).

10 In 1975, they also set up a journal, *Bagués Noticias*, with the collaboration of leading names from the Barcelona world of art, but it folded a year later, shortly after the death of Narcís Bagués.

Exhibit D

JUDGE GERALD    OFFICE COPY

08 CV 00422

Michael G. Goldberg (MG-2135)
Anika Lewis (AL-2005)
PRYOR CASHMAN LLP
410 Park Avenue
New York, New York 10022
Telephone: (212) 421-4100
Fax: (212) 326-0806
Email: mgoldberg@pryorcashman.com
       alewis@pryorcashman.com

    and

Glenn S. Bacal
Frederick M. Cummings
David M. Andersen
JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
The Collier Center, 11th Floor
201 East Washington Street
Phoenix, Arizona 85004
Telephone: (602) 262-5911
Fax: (602) 253-3255

RECEIVED
JAN 16 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Attorneys for Plaintiff The Frank Lloyd Wright Foundation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE FRANK LLOYD WRIGHT FOUNDATION, an Arizona not-for-profit corporation, <br><br> Plaintiff, <br><br> vs. <br><br> HAMPTON COURT JEWELERS LTD. d/b/a CELLINI FINE JEWELRY, a New York domestic business corporation, <br><br> Defendant. | Civil Action No. <br><br> ECF Case <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, The Frank Lloyd Wright Foundation ("Plaintiff" or "The Foundation"), by its attorneys Pryor Cashman LLP and Jennings, Strouss & Salmon, P.L.C., as and for its

Complaint against defendant Hampton Court Jewelers Ltd. d/b/a Cellini Fine Jewelry ("Defendant" or "Cellini"), alleges as follows:

## NATURE OF THE ACTION

1.    The Foundation is a non-profit corporation that depends heavily on income generated through its licensing program.    The Foundation licenses trademarks and copyrights related to the famous Frank Lloyd Wright name in connection with a wide variety of high-quality goods based on, or adapted from, Mr. Wright's many famous architectural and decorative designs.  This case is about Cellini's wrongful use of The Foundation's registered copyrights, registered trademarks, and the famous Frank Lloyd Wright name in connection with its fine jewelry collection "inspired by," or mimicking, some of Mr. Wright's famous works without license or approval from The Foundation.

## PARTIES

2.    The Foundation is a non-profit Arizona corporation.

3.    The Foundation owns famous Frank Lloyd Wright trademarks and copyrights in architectural and decorative designs by Mr. Wright, and licenses those trademarks and copyrights to licensees, creating an important source of revenue for The Foundation's non-profit activities.

4.    The Foundation also owns all rights of publicity of Mr. Wright.

5.    On information and belief, Defendant Hampton Court Jewelers Ltd., d/b/a Cellini Fine Jewelry ("Cellini") is a New York domestic business corporation, authorized to do business and doing business in the United States, with its principal corporate offices located at 301 Park Avenue, New York, New York.

6.    On information and belief, Cellini's primary business is the operation of two retail stores engaged in the sale of fine jewelry and timepieces.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §§ 1331 and 1338(a) and (b) because The Foundation is alleging claims under federal copyright and trademark law, specifically the Copyright Act of 1976, 17 U.S.C. §§ 101 *et. seq.*, and the Lanham (Trademark) Act, 15 U.S.C. §§ 1051 et. seq.

8.     This Court has supplemental jurisdiction over state law claims alleged herein pursuant to 28 U.S.C. § 1367, as such claims form part of the same case and controversy as the federal claims.

9.     Alternatively, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

10.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because Cellini is based in this District.

## FACTS

11.     The Foundation is a non-profit corporation established by Mr. Wright that owns numerous famous Frank Lloyd Wright trademarks as well as copyrights in architectural and decorative designs by Mr. Wright.

12.     While Mr. Wright was still living, The Foundation set up a licensing program with various manufacturers whereby various goods based on or adapted from the works of Mr. Wright were produced pursuant to licenses from The Foundation.

13.     Cellini is a retailer of fine jewelry and timepieces, including jewelry designed by famous designers and well-known jewelry manufacturers.

14.     On information and belief, Cellini is an authorized dealer or licensee for other well-known manufacturers and designers (i.e., Ulysse Nardin, Cartier, and Piaget).

15.     On information and belief, Cellini's experience as a retailer of fine jewelry and timepieces identified with the famous marks and copyrights of their manufacturers and/or designers has made Cellini well aware of the importance and significance of famous trademarks and copyrights.

**<u>Cellini Produced a Jewelry Collection by Wrongfully Copying the Designs of Frank
Lloyd Wright in which The Foundation Owns Registered Copyrights</u>**

16.    The Foundation is the owner of the rights in a book of drawings entitled
"Frank Lloyd Wright Foundation: The Coonley Playhouse" Copyright Registration No. VA
135-504 ("Coonley Playhouse Designs").    The Foundation also owns copyrights in
individual drawings contained within Coonley Playhouse Designs. A copy of the Certificate
of Copyright Registration for the Coonley Playhouse Designs is attached as Exhibit 1.
Copies of the cover, table of contents, and relevant designs from the Coonley Playhouse
Designs are attached as Exhibit 2.

17.    The Foundation is also the owner of the rights in a book of drawings entitled
"Frank Lloyd Wright Glass Designs" Copyright Registration No. VA 272-687 ("Glass
Designs").    This registration extends to the compilation of drawings and the original
drawings themselves for which The Foundation also owns the copyrights.    A copy of the
Certificate of Copyright Registration for the Glass Designs is attached as Exhibit 3.  Copies
of the cover, table of contents, and relevant designs from the Glass Designs are attached as
Exhibit 4.

18.    On information and belief, Cellini knowingly and willfully copied designs
from the Coonley Playhouse Designs and/or the Glass Designs ("Copyrighted Works") or
copied from a derivative work based upon these designs to create and manufacture a new
jewelry collection under the name **"Wright Stuff."**

19.    The "Wright Stuff" jewelry collection was not designed by Mr. Wright, nor
was it designed by anyone affiliated with or authorized by The Foundation.

20.    The collection was not, and is not, authorized by The Foundation.

21.    In the Fall of 2006, Cellini began to market and to offer for sale the "Wright
Stuff" jewelry collection.

22.    On information and belief, this jewelry collection was and is prominently

featured in both Cellini retail locations and on Cellini's website, www.cellinijewelers.com.

23.    On information and belief, there is no indication at either of Cellini's stores or on its website that the jewelry collection's designs were authored by anyone other than Mr. Wright.

24.    On information and belief, each piece in the "Wright Stuff" collection retails for more than $1,000.

## Cellini Used The Foundation's Marks and the Famous Frank Lloyd Wright Name to Market and Sell Jewelry

25.    FRANK LLOYD WRIGHT COLLECTION is a registered trademark of The Foundation (Registration Nos. 2,621,369 (class 35) and 2,621,370 (class 35)).

26.    FRANK LLOYD WRIGHT is a registered trademark of The Foundation (Registration Nos. 1,022,648 (class 16), 1,545,400 (classes 20, 21), 1,871,719 (class 42) and 1,901,709 (class 16)).

27.    The Foundation also owns numerous other trademarks relating to its founder, Mr. Wright, and his works.

28.    "Frank Lloyd Wright" also is Mr. Wright's full name.

29.    Upon learning of the unauthorized use of Mr. Wright's name and The Foundation's marks in Cellini's advertising of the "Wright Stuff" collection, The Foundation further investigated Cellini's business.

30.    Cellini promoted the "Wright Stuff" collection as being **"inspired by the architectural genius of Frank Lloyd Wright."**

31.    The Foundation learned that, in both retail stores, Cellini salespersons regularly, and as a matter of course, referred to the jewelry collection as the **"Frank Lloyd Wright Collection."**

32.    Cellini salespersons also affirmatively stated that the jewelry collection was "authorized," without identifying who made the authorization.

33.    No one other than The Foundation has the right to authorize or license the use of Mr. Wright's name or any of The Foundation's Frank Lloyd Wright-related trademarks in connection with any goods or services.

34.    When specifically confronted with the question of whether The Foundation authorized the collection, it is only then that Cellini salespersons admitted that The Foundation had not authorized these works.

35.    The "Wright Stuff" collection was given the most prominence of any goods in Cellini's Fall 2006 catalog, being the only goods featured on the outside cover of the catalog.  A copy of the front and back cover of Cellini's original Fall 2006 catalog is attached hereto as Exhibit 5.

36.    The Fall 2006 catalog also was made available worldwide on the Internet, on Cellini's website www.cellinijewelers.com.

37.    On information and belief, the prominent placement of the "Wright Stuff" goods on the cover of Cellini's Fall 2006 catalog and on the Internet was intended to, and did, attract consumers to Cellini under the false premise that the goods were authorized by The Foundation.

38.    On information and belief, Cellini sold pieces from the "Wright Stuff" collection to consumers during the time that the "Wright Stuff" advertisements were circulated to the public.

39.    On information and belief, Cellini saw an increase in store traffic at both of its retail locations as a result of its "Wright Stuff" advertisements.

40.    On information and belief, Cellini realized an increase in sales of other fine jewelry and/or timepieces as a result of its "Wright Stuff" advertisements.

41.    Cellini refuses to refrain from all infringing activities.

## COUNT I
### (COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. §§ 101 et seq.)

42.    The Foundation repeats and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 41, above.

43.    The Foundation is the sole owner of, among others, the following federally registered copyrights (the "Copyrights") which are valid and subsisting:

| Copyright | Registration Number | Effective Date |
|---|---|---|
| Frank Lloyd Wright Foundation: The Coonley Playhouse | VA 135-504 | August 12, 1983 |
| Frank Lloyd Wright Glass Designs | VA 272-687 | July 27, 1987 |

44.    On information and belief, Cellini has infringed and continues to infringe The Foundation's copyrights in the Copyrighted Works in violation of 17 U.S.C. § 501.

45.    On information and belief, Cellini knowingly and willfully copied designs from The Foundation's Copyrighted Works or copied from a derivative work based upon these designs to create and manufacture the Wright Stuff jewelry collection without The Foundation's permission.

46.    On information and belief, Cellini has marketed and sold the Wright Stuff collection without The Foundation's permission and continues to market and to sell the Wright Stuff collection in defiance of The Foundation's demand that such infringement of The Foundation's copyrights cease.

47.    On information and belief, the designs used to develop and manufacture the Wright Stuff collection are the same as or substantially similar to the Copyrighted Works. A side-by-side comparison of the designs from the Copyrighted Works and images of jewelry pieces from the Wright Stuff jewelry collection is attached as Exhibit 6.

48.    By its actions alleged above, Cellini has infringed and will continue to infringe Plaintiff's copyrights in and relating to the Copyrighted Works.

49.    Cellini's acts as alleged herein have caused, and unless enjoined will

7

continue to cause irreparable harm and injury to the Foundation for which the Foundation has no adequate remedy at law.

50.    The Foundation is entitled to an injunction restraining Cellini from engaging in any further such acts in violation of the copyright laws.

51.    The Foundation is further entitled to recover damages from Cellini in an amount to be determined at trial, including attorneys' fees, which The Foundation has sustained and will sustain, and any gains, profits and advantages obtained by Cellini as a result of Cellini's acts of infringement alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by The Foundation.

52.    At the Foundation's election, at any time before final judgment is rendered, The Foundation may recover, instead of such actual damages and profits, statutory damages pursuant to 15 U.S.C. §504(c).

## COUNT II
### (TRADEMARK COUNTERFEITING AND TRADEMARK INFRINGEMENT PURSUANT TO 15 U.S.C. § 1114 *et seq*)

53.    The Foundation repeats and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 52, above.

54.    The Foundation is the sole owner of, among others, the following federally registered trademarks (the "Marks"):

| Mark | Registration Number |
|---|---|
| *Frank Lloyd Wright* | 1,545,400 |
| FRANK LLOYD WRIGHT | 1,022,648 |

| Mark | Registration Number |
|------|---------------------|
| FRANK LLOYD WRIGHT COLLECTION | 2,621,369 |
| FRANK LLOYD WRIGHT COLLECTION | 2,621,370 |
| FRANK LLOYD WRIGHT | 1,871,719 |
| FRANK LLOYD WRIGHT | 1,901,709 |

[See copies of the Certificates of Registration attached hereto as Exhibits 7-12, respectively].

55.    The Foundation has continually used the Marks in interstate commerce since their first use.

56.    All of the registrations listed above are valid and subsisting.

57.    Registration Nos. 1,022,648, 1,545,400, 1,871,719, 1,901,709, 2,621,369, and 2,621,370 are incontestable, which under 15 U.S.C. §§ 1065 and 1115 constitutes conclusive evidence of The Foundation's rights to use these Marks.

58.    Registration Nos. 1,871,719, 2,621,369, and 2,621,370 specifically include in the description of goods and services the sale of jewelry items designed by Mr. Wright, adapted from designs by Mr. Wright, or inspired by designs by Mr. Wright.

59.    On information and belief, Cellini has used and/or continued to use the Marks in commerce in connection with the sale, offering for sale, and advertising of jewelry goods allegedly "inspired by" designs by Mr. Wright without The Foundation's permission, and in defiance of The Foundation's demand that such unauthorized use cease.

60.    By their unauthorized use of The Foundation's Marks, Cellini is trading on The Foundation's Marks and is misappropriating the goodwill and reputation which has attached to these trademarks.

61.    Cellini's unauthorized use of the Marks constitutes the use of counterfeits of

federally registered trademarks and will confuse and deceive customers into believing that Cellini and its inferior "Wright Stuff" jewelry collection are associated with and/or authorized by The Foundation.

62.     The actions complained of herein are likely to cause confusion, or to cause mistake, or to deceive others into erroneously believing that the "Wright Stuff" jewelry collection is authorized by, licensed by, sponsored by, endorsed by or otherwise associated with The Foundation.

63.     By reason of the foregoing, The Foundation is being damaged by Cellini's willful, unauthorized use of the Marks and will continue to be damaged unless Cellini is enjoined from using the Marks or any colorable imitations thereof.

64.     The Foundation will be irreparably injured by the continued acts of Cellini, unless such acts are immediately enjoined.

65.     Cellini's conduct entitles The Foundation to injunctive relief pursuant to 15 U.S.C. § 1116(a) preventing further confusing use of the Marks by Cellini and requiring Cellini to cause those who use the Marks on Cellini's behalf to cease such use.  The Foundation has no adequate remedy at law.

66.     Cellini's conduct also entitles The Foundation to damages pursuant to 15 U.S.C. § 1114.

67.     The Foundation is entitled to recover Cellini's profits, three times the amount of any actual damages suffered, attorneys' fees and costs of the action pursuant to 15 U.S.C. § 1117(a).

68.     Because the aforementioned registrations provide constructive notice of use of the Marks, Cellini's use of same cannot be innocent as a matter of law.

69.     This case therefore is extraordinary, entitling The Foundation to additional relief under the Lanham Act, including but not limited to treble damages pursuant to 15 U.S.C. § 1117(a).

70.    Because Cellini's willful actions involve the unauthorized use of a counterfeit mark, The Foundation is also entitled to treble profits and damages, and attorneys' fees, pursuant to 15 U.S.C. § 1117(b).

71.    Further, at The Foundation's election, at any time before final judgment is rendered by this Court, The Foundation may elect to recover, instead of actual damages and profits under 15 U.S.C. § 1117(a), an award of statutory damages pursuant to 15 U.S.C. § 1117(c)(2).

## COUNT III
### (TRADEMARK DILUTION PURSUANT TO 15 U.S.C. § 1125(c))

72.    The Foundation repeats and incorporates by this reference each and every allegation set forth in Paragraphs 1 though 71, above.

73.    The Foundation's Marks are famous marks within the meaning of 15 U.S.C. § 1125(c) and have been famous marks prior to Cellini's conduct complained of herein.

74.    The Foundation's Marks are famous marks by virtue of their substantial inherent and acquired distinctiveness, their association with the famous Frank Lloyd Wright name and Mr. Wright's many famous works, The Foundation's extensive use, advertising and publicity of the Marks, all of which has resulted in strong and widespread recognition of the Marks by the general consuming public, and by virtue of the registration of the Marks on the Principal Trademark Register of the United States Patent and Trademark Office.

75.    Cellini's use of the Marks on and in connection with the advertising and/or sale of the "Wright Stuff" jewelry collection dilutes the strength and distinctive quality of the Marks and lessens the capacity of the Marks to identify and distinguish the products with respect to which The Foundation licenses its Marks.

76.    On information and belief, the Marks were actually diluted as a result of Cellini's wrongful conduct.

77.    On information and belief, Cellini willfully intended to trade on the

recognition of the famous mark.

78.    By reason of the foregoing, The Foundation is being damaged by Cellini's willful use of the Marks in the manner set forth above and will continue to be damaged unless Cellini is immediately enjoined from using the Marks.

79.    The Foundation will be irreparably injured by the continued acts of Cellini, unless such acts are enjoined.  The Foundation has no adequate remedy at law.

80.    On information and belief, Cellini's use of the Marks did not begin until after October 6, 2006.

81.    Pursuant to 15 U.S.C. §§ 1116 and 1125(c)(1), The Foundation is entitled to a permanent injunction preventing Cellini from using any of the Marks in commerce.

82.    In addition to injunctive relief, because Cellini's actions were willful, The Foundation is also entitled to all damages it has sustained in an amount to be determined at trial including, but not limited to Cellini's profits and gains, attorneys' fees and costs of this action pursuant to 15 U.S.C. § 1117(a), as well as destruction of the infringing goods under 15 U.S.C. § 1118.

## COUNT IV
### (UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, FALSE ADVERTISING, AND FALSE ENDORSEMENT PURSUANT TO 15 U.S.C. § 1125(a))

83.    The Foundation repeats and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 82, above.

84.    Cellini's acts constitute the unauthorized reproduction of and misuse of the Marks in commerce in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a).

85.    Cellini's acts further constitute the unauthorized misuse of Mr. Wright's name in commerce in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

86.    Cellini's acts as alleged herein have caused and are likely to cause confusion, mistake or deception on the part of the public as to Cellini's affiliation, connection or

12

association with The Foundation and to cause confusion, mistake or deception on the part of the public as to the true origin, sponsorship or approval of the "Wright Stuff" jewelry collection.

87.     On information and belief, Cellini has undertaken these acts willfully, and with the intent to cause confusion, mistake or deception on the part of the public and to harm to The Foundation.

88.     Cellini's acts as alleged herein constitute unfair competition, false designation of origin, false advertising, and false endorsement in violation of 15 U.S.C. § 1125(a).

89.     Cellini's acts as alleged herein have caused, and unless enjoined will continue to cause, irreparable harm and injury to The Foundation.  The Foundation has no adequate remedy at law.

90.     The Foundation is entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116(a) prohibiting Cellini from using any of The Foundation's Marks, or Mr. Wright's name or likeness, in commerce.

91.     In addition to injunctive relief, The Foundation is entitled to treble damages and profits, costs and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT V
### (COMMON LAW UNFAIR COMPETITION-THE COPYRIGHTED WORKS)

92.     The Foundation repeats and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 91, above.

93.     The Copyrighted Works which Cellini has taken and utilized in its products to create the "Wright Stuff" jewelry collection are the product of Mr. Wright's skill, labor, expertise, talent and expenditures.

94.     Cellini's actions as alleged herein are calculated to, are likely to and, upon

information and belief, actually have, deceived and misled purchasers into believing that the "Wright Stuff" jewelry collection originates with or is authorized by The Foundation.

95.   By such actions, Cellini, with full knowledge of the notoriety and popularity of The Foundation's Copyrighted Works, intended to pass off its own products as those legitimately authorized by The Foundation and have traded on the goodwill associated with the Copyrighted Works in order to arrogate to themselves the economic benefit of the goodwill associated with such works.

96.   Cellini's acts as alleged above constitute unfair competition under the common law of the State of New York and will, unless enjoined by this Court, result in the destruction and/or diversion of The Foundation's goodwill and in the unjust enrichment of Cellini.

97.   Upon information and belief, Cellini has committed the acts alleged herein willfully, intentionally, fraudulently, wantonly and maliciously, with the express intent to injure The Foundation in its business.

98.   Upon information and belief, Cellini has obtained gains, profits and advantages as a result of its acts of unfair competition as herein above alleged.

99.   The Foundation has suffered and continues to suffer irreparable harm and injury as a result of the aforesaid acts of Cellini, and is without an adequate remedy at law.

100.   The Foundation has suffered damages as a result of Cellini's aforesaid acts in an amount to be determined at trial, plus punitive damages.

## COUNT VI
### (COMMON LAW UNFAIR COMPETITION-THE MARKS)

101.   The Foundation repeats and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 100, above.

102.   The Foundation owns and enjoys common law trademark rights in the Marks set forth herein, in New York and throughout the United States. The Foundation's rights in

the Marks are superior to any rights that Cellini may claim in and to the Marks for any purpose, and especially in connection with jewelry.

103.    Cellini's unlawful acts in appropriating rights in The Foundation's common law Marks were intended to capitalize on The Foundation's goodwill for Cellini's own pecuniary gain.  The Foundation has expended substantial time, resources and effort to obtain an excellent reputation for itself, the products it licenses its Marks in connection therewith and its Marks.  As a result of The Foundation's efforts, Cellini is now unjustly enriched and is benefiting from property rights that rightfully belong to The Foundation.

104.    Cellini's unauthorized use of The Foundation's Marks on and in connection with the sale, offering for sale, and advertising of the "Wright Stuff" jewelry collection has caused and is likely to cause confusion as to the source of such products, all to the detriment of The Foundation.

105.    Cellini's acts are willful, deliberate, and intended to confuse the public and to injure The Foundation.

106.    Cellini's acts constitute unfair competition under New York common law.

107.    The Foundation has been irreparably harmed and will continue to be irreparably harmed as a result of Cellini's unlawful acts unless Cellini is permanently enjoined from its unlawful conduct.  The Foundation has no adequate remedy at law.

108.    In view of the foregoing, The Foundation is entitled to preliminary and permanent injunctive relief prohibiting Cellini from using its Marks.

109.    In addition to injunctive relief, The Foundation is entitled to recover all damages, including attorneys' fees, that The Foundation has sustained and will sustain, and all gains, profits and advantages obtained by Cellini as a result of its violations alleged above in an amount to be determined at trial and the costs of this action, as well as punitive damages as a result of Cellini's intentional, willful, wanton and malicious conduct.

**COUNT VII**
(VIOLATION OF NEW YORK'S ANTI-DILUTION STATUTE
NEW YORK GENERAL BUSINESS LAW §360-I)

110.    The Foundation repeats and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 109, above.

111.    The Foundation's Marks are distinctive marks in the State of New York by virtue of their substantial inherent and acquired distinctiveness, extensive use in the State of New York and the extensive advertising and widespread publicity of the Marks in the State of New York.

112.    As a result of the foregoing, the Marks have become strong and are famous.

113.    The Foundation's Marks, which Cellini copied, have become distinctive symbols of goodwill that have been engendered in The Foundation's products and represent significant and valuable proprietary assets to The Foundation.

114.    Cellini's unauthorized use of The Foundation's valuable trademarks will dilute, tarnish and blur those marks.

115.    The actions of Cellini complained of herein have already injured and are likely to continue to injure the business reputation and dilute the distinctive quality of The Foundation's famous Marks.

116.    The foregoing acts of Cellini constitute dilution in violation of Section 360-(I) of the New York General Business Law.

117.    By reason of the foregoing, The Foundation has been and is being damaged by Cellini's unauthorized and illegal use of the Marks in the manner set forth above and will continue to be damaged unless Cellini is immediately enjoined under Section 360-(l) of the New York General Business Law from using the Marks..

118.    The Foundation will be irreparably injured by the continued acts of Cellini, unless such acts are enjoined.

119.    The Foundation has no adequate remedy at law.

**COUNT VIII**
(UNLAWFUL DECEPTIVE ACTS AND PRACTICES
NEW YORK GENERAL BUSINESS LAW §349)

120.    The Foundation repeats and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 119, above.

121.    Cellini, without The Foundations' authorization or consent, and having knowledge of The Foundation's well-known and prior rights in and to the Marks and the fact that Cellini's "Wright Stuff" jewelry collection is confusingly similar to the products that The Foundation licenses its Marks for use in connection with, and for which it is famous, has manufactured, advertised, distributed, offered for sale and/or sold the "Wright Stuff" jewelry collection to the consuming public in direct competition with The Foundation.

122.    Cellini's use of the Marks is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of Cellini's "Wright Stuff" collection, and is likely to deceive the public into believing such products being sold by Cellini originate from, are associated with, or are otherwise authorized by The Foundation.

123.    Cellini's deceptive acts and practices involve public sales activities of a recurring nature.

124.    The Foundation has no adequate remedy at law, and if Cellini's activities are not enjoined, The Foundation will continue to suffer irreparable harm and injury to its goodwill and reputation.

125.    In addition to injunctive relief, The Foundation is entitled to all damages it has sustained in an amount to be determined at trial but not less than Cellini's profits and gains and the Foundation's attorneys' fees and costs of this action.

**COUNT IX**
(VIOLATION OF RIGHT OF PUBLICITY)

126.    The Foundation repeats and incorporates by this reference each and every

allegation set forth in Paragraphs 1 through 125, above.

127.    The Foundation is the owner of all rights of publicity for Mr. Wright.

128.    Mr. Wright exercised his rights of publicity for commercial purposes during his lifetime.

129.    The name Frank Lloyd Wright has been and continues to be reasonably identifiable to the public.

130.    By using Mr. Wright's name in connection with its "Wright Stuff" jewelry pieces without the consent of The Foundation, Cellini wrongfully appropriated Mr. Wright's name to its own commercial advantage.

131.    Cellini capitalized on and commercialized Mr. Wright's name to advertise, sell, and/or draw the public's attention to the "Wright Stuff" collection.

132.    The Foundation did not consent to Cellini's use of Mr. Wright's name.

133.    Cellini's wrongful use of Mr. Wright's name without permission or license damaged The Foundation in an amount to be determined at trial, including but not limited to a disgorgement of all profits Cellini earned as a result of its wrongful conduct.

134.    Cellini's acts as alleged herein have caused, and if not enjoined will continue to cause, irreparable harm and injury to The Foundation.

135.    The Foundation is entitled to permanent injunctive relief prohibiting Cellini from using Mr. Wright's name or likeness in commerce, plus damages in an amount to be determined by this Court.

WHEREFORE, The Foundation demands judgment against Cellini on all of the Counts as follows:

(a)    for a permanent injunction prohibiting Cellini from (1) manufacturing, making or producing, or having manufactured, made or produced, unauthorized reproductions of The Foundation's Copyrighted Works, (2) creating or having created

18

unauthorized derivative works based upon The Foundation's Copyrighted Works, and (3) distributing, selling or displaying, or having distributed, sold or displayed, any unauthorized reproductions or derivative works of The Foundation's Copyrighted Works; and (4) using The Foundation's Marks, Mr. Wright's name or likeness, or any other confusingly similar mark or name, in connection with any unauthorized reproduction or derivative of The Foundation's Copyrighted Works, or in any other unauthorized manner, without The Foundation's consent;

(b)    for an injunction ordering Cellini to deliver up to The Foundation for destruction any unauthorized reproductions of The Foundation's Copyrighted Works and any unauthorized derivative works based upon The Foundation's Copyrighted Works, as well as any masks, molds, or other tooling used to manufacture, make or produce any unauthorized reproductions or derivative works of The Foundation's Copyrighted Works;

(c)    for an injunction ordering Cellini to remove, relinquish and destroy all advertisements or promotional materials, including the removal of any and all Internet websites, that, without The Foundation's consent, bear The Foundation's Marks or advertise any unauthorized reproductions or derivative works of The Foundation's Copyrighted Works;

(d)    for an injunction ordering Cellini to deliver up to The Foundation for destruction, all catalogs, labels, signs, pictures, letterhead, invoices, brochures, fliers, advertisements, packages, photographs, negatives, products or other materials in the possession or control of Cellini that bear, without The Foundation's consent, The Foundations Mark's or any unauthorized reproduction, photograph, replica, derivative work or copy of The Foundation's Copyrighted Works;

(e)    for an injunction ordering Cellini to provide The Foundation with a complete and accurate accounting of all sales, purchases, revenues and profits relating to Cellini's acts of (1) manufacturing, making or producing, or having manufactured, made or produced,

unauthorized reproductions of The Foundation's Copyrighted Works, (2) creating or having created unauthorized derivative works based upon The Foundation's Copyrighted Works, and (3) distributing, selling or displaying, or having distributed or otherwise sold or displayed, any unauthorized reproductions or derivative works of The Foundation's Copyrighted Works; (4) using The Foundation's Marks, Mr. Wright's name or likeness, or any other confusingly similar mark or name, in connection with any unauthorized reproduction or derivative of The Foundation's Copyrighted Works, or in any other unauthorized manner, without the Foundation's consent; and (5) manufacturing, making, producing, displaying, advertising, distributing, or selling any other goods along side, in connection with, or at the same time as any unauthorized reproductions or derivative works of The Foundation's Copyrighted Works;

(f)     for actual damages and Cellini's profits attributable to the copyright infringement in an amount to be proven at trial, but in any event in excess of $75,000, or at The Foundation's option, statutory damages in the amount of up to $150,000 per work infringed;

(g)     for actual damages and Cellini's profits attributable to the trademark infringement in an amount to be proven at trial, but in any event in excess of $75,000, and that such damages be trebled pursuant to 15 U.S.C. § 1117(a) or 15 U.S.C. § 1117(b), as appropriate, or at the Foundation's election, statutory damages in the amount of up to $1,000,000 per counterfeit mark pursuant to 15 U.S.C. § 1117(c)(2);

(h)     for monetary damages suffered as a result of Cellini's unauthorized use of Mr. Wright's name and the Foundation's Marks in connection with Cellini's goods in an amount to be determined at trial, but in any event in excess of $75,000;

(i)     for costs of this action and reasonable attorney's fees pursuant to 17 U.S.C. § 505, 15 U.S.C. § 1117(a), and other applicable law;

(j)     for interest on such monetary damages from the date of judgment until paid, costs and attorneys' fees;

(k)     for punitive damages; and

(l)     for such other and further relief as the Court may deem just and reasonable under the circumstances.

Dated: New York, New York
       January 16, 2008

                    PRYOR CASHMAN LLP

                    By: _____
                        Michael G. Goldberg (MG-2435)
                        Anika Lewis (AL-2005)
                        410 Park Avenue
                        New York, New York 10022
                        Telephone: (212) 421-4100
                        Fax: (212) 326-0806
                        Email: mgoldberg@pryorcashman.com

                            and

                    Glenn S. Bacal
                    Frederick M. Cummings
                    David M. Andersen
                    JENNINGS, STROUSS & SALMON, P.L.C.
                    A Professional Limited Liability Company
                    The Collier Center, 11th Floor
                    201 East Washington Street
                    Phoenix, Arizona 85004
                    Telephone: (602) 262-5911
                    Fax: (602) 253-3255

                    Attorneys for Plaintiff The Frank Lloyd Wright
                    Foundation

## JURY DEMAND

Plaintiff, by its attorneys Pryor Cashman LLP and Jennings, Strouss & Salmon,

P.L.C., hereby demands trial by jury of all claims so triable pursuant to Fed. R. Civ. P. 38.

Dated: New York, New York
       January 16, 2008

PRYOR CASHMAN LLP

By: _____
        Michael G. Goldberg (MG-2135)
        Anika Lewis (AL-2005)
        410 Park Avenue
        New York, New York 10022
        Telephone: (212) 421-4100
        Fax: (212) 326-0806
        Email: mgoldberg@pryorcashman.com

and

Glenn S. Bacal
Frederick M. Cummings
David M. Andersen
JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
The Collier Center, 11th Floor
201 East Washington Street
Phoenix, Arizona 85004
Telephone: (602) 262-5911
Fax: (602) 253-3255

Attorneys for Plaintiff The Frank Lloyd Wright
Foundation

Exhibit 1

# CERTIFICATE OF COPYRIGHT REGISTRATION

## FORM VA
UNITED STATES COPYRIGHT OFFICE

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*Dand Ladd*

**REGISTER OF COPYRIGHTS**
*United States of America*

REGISTRATION NUMBER

**VA    135-504**
VAU

EFFECTIVE DATE OF REGISTRATION

**12 AUG 1983**
Month    Day    Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM VA/CON)**

**① Title**

TITLE OF THIS WORK:
Frank Lloyd Wright Foundation:  The Coonley Playhouse

NATURE OF THIS WORK: (See instructions)
Book of Drawings

Previous or Alternative Titles:

PUBLICATION AS A CONTRIBUTION: (If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.)
Title of Collective Work:  N/A    Vol....    No....    Date....    Pages....

**② Author(s)**

IMPORTANT: Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

1
NAME OF AUTHOR:  Frank Lloyd Wright Foundation
Was this author's contribution to the work a "work made for hire"?  Yes  X.  No....
AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of {Name of Country}  or  Domiciled in  United States
AUTHOR OF: (Briefly describe nature of this author's contribution)
The selection and ordering of drawings by Frank Lloyd Wright
DATES OF BIRTH AND DEATH:
Born....  Died....
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?  Yes....  No. X.
Pseudonymous?  Yes....  No. x.
If the answer to either of these questions is "Yes," see detailed instructions attached.

2
NAME OF AUTHOR:
Was this author's contribution to the work a "work made for hire"?  Yes....  No....
AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of {Name of Country}  or  Domiciled in {Name of Country}
AUTHOR OF: (Briefly describe nature of this author's contribution)
DATES OF BIRTH AND DEATH:
Born....  Died....
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?  Yes....  No....
Pseudonymous?  Yes....  No....
If the answer to either of these questions is "Yes," see detailed instructions attached.

3
NAME OF AUTHOR:
Was this author's contribution to the work a "work made for hire"?  Yes....  No....
AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of {Name of Country}  or  Domiciled in {Name of Country}
AUTHOR OF: (Briefly describe nature of this author's contribution)
DATES OF BIRTH AND DEATH:
Born....  Died....
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?  Yes....  No....
Pseudonymous?  Yes....  No....
If the answer to either of these questions is "Yes," see detailed instructions attached.

**③ Creation and Publication**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED:
Year 1983
(This information must be given in all cases.)

DATE AND NATION OF FIRST PUBLICATION:
Date June 1, 1983
Month  Day  Year
Nation United States
(Name of Country)
(Complete this block ONLY if this work has been published.)

**④ Claimant(s)**

NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):
The Frank Lloyd Wright Foundation
P. O. Box 4430
Scottsdale, Arizona  85258

(Please note that the Foundation by will obtained ownership of the copyright for the drawings in this work).

TRANSFER: (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.)

*Added by C.O. authority telephone call w/Glen Bacal on Sep. 1, 1983.

| | EXAMINED BY: | APPLICATION RECEIVED: | |
|---|---|---|---|
| | CHECKED BY: | 12 AUG 15 3 | |
| VA   135-504 | CORRESPONDENCE:<br>☐ Yes | DEPOSIT RECEIVED:<br>12 AUG 1983   12 AUG 1983 | FOR<br>COPYRIGHT<br>OFFICE<br>USE<br>ONLY |
| | DEPOSIT ACCOUNT<br>FUNDS USED:<br>☐ | REMITTANCE NUMBER AND DATE:<br>295741 AUG 12 83 | |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM VA/CON)**

**PREVIOUS REGISTRATION:**

• Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office? Yes........ No..X....

• If your answer is "Yes," why is another registration being sought? (Check appropriate box)
☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☐ This is a changed version of the work, as shown by line 6 of the application.

• If your answer is "Yes," give: Previous Registration Number........................... Year of Registration...........

**⑤**
Previous
Registration

**COMPILATION OR DERIVATIVE WORK:** (See instructions)

PREEXISTING MATERIAL: (Identify any preexisting work or works that this work is based on or incorporates.)
Compilation of drawings of Frank Lloyd Wright some of which
have been previously copyrighted

MATERIAL ADDED TO THIS WORK: (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)

**⑥**
Compilation
or
Derivative
Work

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name: ......N/A......

Account Number: ..............

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)

Name: ....Glenn S. Bacal, Esq.....
........c/o Lewis and Roca......
Address: ..100 West Washington, Suite 2300
..............Phoenix, Arizona    85003.....

**⑦**
Fee and
Correspond-
ence

**CERTIFICATION: *** I, the undersigned, hereby certify that I am the: (Check one)
☐ author ☐ other copyright claimant ☐ owner of exclusive rights ☐ authorized agent of... The Frank Lloyd Wright Foundation
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X) _Glenn S. Bacal_

Typed or printed name: ..Glenn S. Bacal..........    Date: 8/9/83

**⑧**
Certification
(Application
must be
signed)

Glenn S. Bacal, Esq.
c/o Lewis and Roca
100 West Washington, Suite 2300
Phoenix, Arizona   85003

**MAIL
CERTIFICATE
TO**

(Certificate will
be mailed in
window envelope)

**⑨**
Address
For Return
of
Certificate

• 17 U.S.C. § 506(e): FALSE REPRESENTATION — Any person who knowingly makes a false representation...

Exhibit 2

# FRANK LLOYD WRIGHT DRAWINGS:

# THE COONLEY PLAYHOUSE

Compiled by The Frank Lloyd Wright Memorial Foundation

Copyright (c) The Frank Lloyd Wright Foundation 1983

FRANK LLOYD WRIGHT DRAWINGS

THE COONLEY PLAYHOUSE     PR# 1201

| Pl# | 4x5# | drg# | Drawing | (c)date |
|------|------|---------|---------|---------|
| 1. | 268 | 1201.01 | 3 Playhouse windows | 1962 |
| 2. | 6921 | 1201.02 | 3 Playhouse windows concept design | 1983 |
| 3. | 6922 | 1201.03 | 3 Playhouse windows concept design | 1955 |
| 4. | 6923 | 1201.04 | Presentation view | NEW |
| 5. | 6924 | 1201.05 | developed drawing for glass | 1977 |
| 6. | 6925 | 1201.06 | developed drawing for glass | 1977 |
| 7. | 6926 | 1201.07 | conceptual plan | 1983 |
| 8. | 6927 | 1201.08 | development elevation | 1983 |
| 9. | 6928 | 1201.09 | WD(working drawing)plan | 1983 |
| 10. | 6929 | 1201.10 | WD elevation | 1983 |
| 11. | 6930 | 1201.11 | WD elevations | 1983 |
| 12. | 6931 | 1201.12 | WD steel schedule | 1983 |
| 13. | 6932 | 1201.13 | WD#1 plan, footings | 1983 |
| 14. | 6933 | 1201.14 | WD#2 ground floor plan | 1983 |
| 15. | 6934 | 1201.15 | WD#3 roof plan | 1983 |
| 16. | 6935 | 1201.16 | WD#4 elevations | 1983 |
| 17. | 6936 | 1201.17 | WD#5 elevations | 1983 |
| 18. | 6938 | 1201.18 | WD#6 sections | 1983 |
| 19. | 6937 | 1201.19 | WD#7 details | 1983 |
| 20. | 6939 | 1201.20 | WD#8 details | 1983 |
| 21. | 6940 | 1201.21 | WD#9 fireplace and chimney | 1983 |
| 22. | 6941 | 1201.22 | WD#10 details | 1983 |
| 23. | 14077 | 1201.— | publication Plan | 1942,1970 |



WINDOW SYMPHONY GLASS COONLEY PLAYHOUSE 1911

Plate #1.  Copyright (c) The Frank Lloyd Wright Foundation 1962

Plate 59. Copyright (c) The Frank Lloyd Wright Foundation 1983

2





Plate #6. Copyright (c) The Frank Lloyd Wright Foundation 1977

Exhibit 3

10/02/2007  16:13    480-4518989                S LUCAS                    PAGE  02

# CERTIFICATE OF COPYRIGHT REGISTRATION



This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*REGISTER OF COPYRIGHTS*

**FORM VA**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

VA — 272 687

EFFECTIVE DATE OF REGISTRATION

JUL 27 1987

Month        Day        Year

OFFICIAL SEAL — DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

**1**

TITLE OF THIS WORK ▼

FRANK LLOYD WRIGHT GLASS DESIGNS

NATURE OF THIS WORK ▼ See Instructions

Book of Drawings

PREVIOUS OR ALTERNATIVE TITLES ▼

N/A

PUBLICATION AS A CONTRIBUTION  If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    Title of Collective Work ▼

N/A

If published in a periodical or serial give: Volume ▼        Number ▼        Issue Date ▼        On Pages ▼

**2**

NAME OF AUTHOR ▼

**a**  The Frank Lloyd Wright Foundation

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼
N/A

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
on { Citizen of ▶ USA
   { Domiciled in ▶ USA

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?      ☐ Yes ☒ No
Pseudonymous?   ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of the material created by this author in which copyright is claimed. ▼

Original drawings and compilation of original drawings

NOTE
Under the law, the "author" of a "work made for hire" is generally the employer...

**b**  NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
on { Citizen of ▶
   { Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?      ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**c**  NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
on { Citizen of ▶
   { Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?      ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**3**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED  This information must be given in all cases.
1987  ◀ Year

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▶ Jun  Day ▶ 15  Year ▶ 1987
Nation ▶ USA

**4**

COPYRIGHT CLAIMANT(S)  Name and address must be given even if the claimant is the same as the author given in space 2. ▼

The Frank Lloyd Wright Foundation
P. O. Box 4430
Scottsdale, Arizona 85261

APPLICATION RECEIVED
JUL 27 1987
ONE DEPOSIT RECEIVED
TWO DEPOSITS RECEIVED
JUL 27 1987
REMITTANCE NUMBER AND DATE

TRANSFER  If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

MORE ON BACK ▶  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
               • See detailed instructions.
               • Sign the form at line 8.

DO NOT WRITE HERE

Page 1 of ___2___ pages

10/02/2007  16:13    480-4518989    S LUCAS    PAGE  89

EXAMINED BY  *QW*

CHECKED BY

FORM VA

*Added by CO, authority Glen S. Bacal, Esq., telephone 31Aug87.

VI    272 687

☐ CORRESPONDENCE  Yes

☐ DEPOSIT ACCOUNT FUNDS USED

FOR COPYRIGHT OFFICE USE ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**PREVIOUS REGISTRATION**  Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

☐ This is the first published edition of a work previously registered in unpublished form.

☐ This is the first application submitted by this author as copyright claimant.

☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼    Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION**  Complete both spaces 6a & 6b for a derivative work; complete only 6b for a compilation.

a.  Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

**6**

See instructions before completing this space.

b.  Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

The author has originally compiled original drawings. Most of these drawings have never been previously published and are original with the author; the copyright claim extends to them as well as to the compilation.

**DEPOSIT ACCOUNT**  If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼    Account Number ▼

**7**

**CORRESPONDENCE**  Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼

Glenn S. Bacal, Esq.

Lewis and Roca

100 W. Washington, Suite 1300

Phoenix, Arizona

Area Code & Telephone Number ▶    (602) 262-5783

Be sure to give your daytime phone number

**CERTIFICATION***  I, the undersigned, hereby certify that I am the

Check only one ▼

☐ author

☐ other copyright claimant

☐ owner of exclusive right(s)

☒ authorized agent of    The Frank Lloyd Wright Foundation

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼  If this is a published work, this date must be the same as or later than the date of publication given in space 3.

Glenn S. Bacal

Handwritten signature (X) ▼    date ▶ 2/23/87

**MAIL CERTIFICATE TO**

Certificate will be mailed in window envelope

Name ▼

Glenn S. Bacal, Esq., Lewis and Roca

Number/Street/Apartment Number ▼

100 West Washington, Suite 1300

City/State/Zip ▼

Phoenix, Arizona 85003

Have you:
• Completed all necessary spaces?
• Signed your application in space 8?
• Enclosed check or money order for $10 payable to Register of Copyrights?
• Enclosed your deposit material with the application and fee?

MAIL TO: Register of Copyrights, Library of Congress, Washington, D.C. 20559.

**9**

* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

☆ U.S. GOVERNMENT PRINTING OFFICE: 1987: 181—891/40,018

February 1987—100,000

Exhibit 4

# FRANK LLOYD WRIGHT GLASS DESIGNS

Compiled by The Frank Lloyd Wright Memorial Foundation

Copyright © The Frank Lloyd Wright Foundation 1987

| WORK | DRAWING # | FILM # | DESCRIPTION | PLATE # |
|------|-----------|--------|-------------|---------|
| Gale, Mrs. Thomas | 0905.007 Memcat86a,GL87 | 8905 | Glass design | 80. |
| Gale, Mrs. Thomas | 0905.008 Memcat86a,GL87 | 8906 | Glass design | 81. |
| Gale, Mrs. Thomas | 0905.009 Memcat86a,GL87 | 8907 | Glass design | 82. |
| Robie, Frederick C. | 0908.004 DLA59,SCH85,GL87 | 5698 | Glass design MOMA289 | 83. |
| Robie, Frederick C. | 0908.009 GL87 | 5703 | Glass design | 84. |
| Robie, Frederick C. | 0908.010 GL87 | 5704 | Glass designs, 3 | 85. |
| Steffens, Oscar | 0909.009 GL87 | 7386 | Glass designs | 86. |
| Steffens, Oscar | 0909.010 GL87 | 7387 | Glass designs | 87. |
| Screen(MOMA #288) | 0912.001 MOMA62,GL87 | 272 | Screen design | 88. |
| Ziegler, Rev. L.R. | 1007.012 GL87 | 9476 | Design for glass | 89. |
| Ziegler, Rev. L.R. | 1007.013 GL87 | 9477 | Framing for glass | 90. |
| Coonley stable group | 1103.009 GL87 | 6887 | Glass design | 91. |
| Coonley stable group | 1103.011 GL87 | 6889 | Glass design | 92. |
| Coonley stable group | 1103.012 GL87 | 6890 | Glass design | 93. |
| Coonley Playhouse | 1201.001 MOMA62,Mono3-87,GL87 | 21105 | Glass design (3) | 94. |
| Coonley Playhouse | 1201.002 SCH85,Memcat83a,GL87 | 6921 | Glass designs,3small | 95. |
| Coonley Playhouse Wind. | 1201.003 DLA59,Memcat83a,AA55,GL87 | 21104 | Glass designs, 3 | 96. |
| Coonley Playhouse | 1201.005 DA77,SCH85,Memcat83a,GL87 | 6924 | Glass design | 97. |
| Coonley Playhouse | 1201.006 DA77,Memcat83a,GL87 | 6925 | Glass design | 98. |
| Lake Geneva Inn | 1202.002 Memcat81g,SCH85,GL87 | 4459 | Window design | 99. |



Copyright © The Frank Lloyd Wright Foundation 1965



Copyright © The Franklin Institute 1979. All rights reserved.



Copyright © The Frank Lloyd Wright Foundation, 1977

1201.005

97.



Copyright © The Frank Lloyd Wright Foundation 1977

lrol·00b

98.

Exhibit 5



# cellini

www.CelliniJewelers.com







**WRIGHT STUFF** Art Deco jewelry collection inspired by the architectural genius of Frank Lloyd Wright. Vibrant enamel is accented with diamonds in 18-karat yellow gold. Exclusively at Cellini. Bracelets from top: $16,000, $14,200, $21,500, $43,800. Ring, $9,500. Earrings, $7,100.

Exhibit 6



Frank Lloyd Wright Coonley Playhouse Windows

#3

#2

#1

Cellini Bracelets



Cellini bracelet #4



Frank Lloyd Wright
Coonley Playhouse window #3





Bottom ride side of bracelet (enlarged)



Left side of window (enlarged)

**Comparison #1**





## Comparison #2




Frank Lloyd Wright
Coonley Playhouse window #3





Right side of window (enlarged)

Left side of bracelet
(enlarged)



Left side of bracelet
(enlarged and flipped)





Cellini bracelet #4

## Comparison #3







Bottom right side of bracelet (enlarged)



Left side of window (enlarged)



Frank Lloyd Wright
Coonley Playhouse window #1



Cellini bracelet #4

Cellini bracelet #4





Right side of window (enlarged)





Right side of bracelet
(flipped and enlarged)



Right side of bracelet
(enlarged)

Frank Lloyd Wright
Coonley Playhouse window #1

## Comparison #4





## Comparison #5





Top of window
(enlarged and flipped)



Bracelet (enlarged and flipped)



Frank Lloyd Wright
Coonley Playhouse window #2





Top of window (enlarged)





Cellini bracelet #3

Cellini bracelet #4



Frank Lloyd Wright
Coonley Playhouse window #2







Left side of bracelet
(enlarged)

Top of window (enlarged)



Left side of bracelet
(enlarged and flipped)

**Comparison #6**





Exhibit 7

Int. Cls.: 20 and 21

Prior U.S. Cls.: 2, 32 and 33

## United States Patent and Trademark Office

Reg. No. 1,545,400
Registered June 27, 1989

## TRADEMARK
### PRINCIPAL REGISTER

*Frank Lloyd Wright*

FRANK LLOYD WRIGHT FOUNDATION, THE
  (ARIZONA CORPORATION)
TALIESIN WEST
SCOTTSDALE, AZ 85261

· FOR: FURNITURE, NAMELY TABLES AND
CHAIRS, IN CLASS 20 (U.S. CL. 32).

FIRST USE 11–0–1955; IN COMMERCE
10–0–1986.

FOR: DECORATIVE CRYSTAL, NAMELY
CANDLESTICKS, IN CLASS 21 (U.S. CLS. 2
AND 33).

FIRST USE 4–0–1986; IN COMMERCE
4–0–1986.

OWNER OF U.S. REG. NOS. 1,022,252 AND
1,022,643.

SER. NO. 718,047, FILED 3–21–1988.

CANDICE ABATE, EXAMINING ATTORNEY

Exhibit 8

Int. Cl.: 16

Prior U.S. Cl.: 38

## United States Patent Office

Reg. No. 1,022,648
Registered Oct. 14, 1975

## TRADEMARK
### Principal Register



The Frank Lloyd Wright Foundation (Arizona corporation)
P.O. Box 100
Scottsdale, Ariz.  85252

For: BOOKS, PAMPHLETS AND CATALOGS DEALING WITH THE WORK OF FRANK LLOYD WRIGHT, in CLASS 16 (U.S. CL. 38).

First use on or about Nov. 12, 1953; in commerce on or about Nov. 12, 1953.

The name "Frank Lloyd Wright" is that of a deceased person.

Ser. No. 18,866, filed Apr. 15, 1974.

J. H. WEBB, Examiner

Exhibit 9

Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

Reg. No. 2,621,369

## United States Patent and Trademark Office

Registered Sep. 17, 2002

### SERVICE MARK
### PRINCIPAL REGISTER



FRANK LLOYD WRIGHT FOUNDATION, THE (ARIZONA NON-PROFIT CORPORATION)
P.O. BOX 4430
SCOTTSDALE, AZ 85261

FOR: COMPUTERIZED ON-LINE RETAIL SERVICES IN THE FIELD OF FURNITURE, CLOTHING, HOME FURNISHINGS, OBJECTS OF INTERIOR DESIGN, JEWELRY, RUGS, ORNAMENTS, BOOKS, LUMINARIES, VASES, COASTERS, METAL AND WOOD ART GLASS PANELS, PRINTS, LAMPS, LIGHTING FIXTURES, PICTURE FRAMES, EYEGLASS CASES, TIMEPIECES, PERSONAL ACCESSORIES, DISHWARE, SCULPTURE, CANDLES, TOWELS, PINS, ICE BUCKETS, BARWARE, MOBILES, URNS, KNIVES, HOME FURNISHINGS, PILLOWS, UMBRELLAS, ART PRINTS, TOYS, CARDS, LETTER OPENERS, AND COMPUTER ACCESSORIES, ALL INSPIRED BY A NOTED ARCHITECT, ADAPTED FROM DESIGNS OF A NOTED ARCHITECT, AND DESIGNED BY A NOTED ARCHITECT; RETAIL SHOPS FEATURING GOODS IN THE FIELD OF FURNITURE, CLOTHING, HOME FURNISHINGS, OBJECTS OF INTERIOR DESIGN, JEWELRY, RUGS, ORNAMENTS, BOOKS, LUMINARIES, VASES, COASTERS, METAL AND WOOD ART GLASS PANELS, PRINTS, LAMPS, LIGHTING FIXTURES, PICTURE FRAMES, EYEGLASS CASES, TIMEPIECES, PERSONAL ACCESSORIES, DISHWARE, SCULPTURE, CANDLES, TOWELS, PINS, ICE BUCKETS, BARWARE, MOBILES, URNS, KNIVES, HOME FURNISHINGS, PILLOWS, UMBRELLAS, ART PRINTS, TOYS, CARDS, LETTER OPENERS, AND COMPUTER ACCESSORIES, ALL INSPIRED BY A NOTED ARCHITECT, ADAPTED FROM DESIGNS OF A NOTED ARCHITECT, AND DESIGNED BY A NOTED ARCHITECT. AND MAIL, TELEPHONE AND FACSIMILE ORDER CATALOG SERVICES FEATURING GOODS IN THE FIELD OF FURNITURE, CLOTHING, HOME FURNISHINGS, OBJECTS OF INTERIOR DESIGN, JEWELRY, RUGS, ORNAMENTS, BOOKS, LUMINARIES, VASES, COASTERS, METAL AND WOOD ART GLASS PANELS, PRINTS, LAMPS, LIGHTING FIXTURES, PICTURE FRAMES, EYEGLASS CASES, TIMEPIECES, PERSONAL ACCESSORIES, DISHWARE, SCULPTURE, CANDLES, TOWELS, PINS, ICE BUCKETS, BARWARE, MOBILES, URNS, KNIVES, HOME FURNISHINGS, PILLOWS, UMBRELLAS, ART PRINTS, TOYS, CARDS, LETTER OPENERS, AND COMPUTER ACCESSORIES, ALL INSPIRED BY A NOTED ARCHITECT, ADAPTED FROM DESIGNS OF A NOTED ARCHITECT, AND DESIGNED BY A NOTED ARCHITECT, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 9-0-1997; IN COMMERCE 9-0-1997.

OWNER OF U.S. REG. NOS. 1,022,648, 1,901,709 AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COLLECTION", APART FROM THE MARK AS SHOWN.

SER. NO. 78-011,785, FILED 6-8-2000.

JOHN GARTNER, EXAMINING ATTORNEY

Exhibit 10

Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

**United States Patent and Trademark Office**

Reg. No.: 2,621,370
Registered Sep. 17, 2002

### SERVICE MARK
### PRINCIPAL REGISTER

## FRANK LLOYD WRIGHT COLLECTION

FRANK LLOYD WRIGHT FOUNDATION, THE (ARIZONA NON-PROFIT CORPORATION)
P.O. BOX 4430
SCOTTSDALE, AZ 85261

FOR: COMPUTERIZED ON-LINE RETAIL SERVICES IN THE FIELD OF FURNITURE, CLOTHING, HOME FURNISHINGS, OBJECTS OF INTERIOR DESIGN, JEWELRY, RUGS, ORNAMENTS, BOOKS, LUMINARIES, VASES, COASTERS, METAL AND WOOD ART GLASS PANELS, PRINTS, LAMPS, LIGHTING FIXTURES, PICTURE FRAMES, EYEGLASS CASES, TIMEPIECES, PERSONAL ACCESSORIES, DISHWARE, SCULPTURE, CANDLES, TOWELS, PINS, ICE BUCKETS, BARWARE, MOBILES, URNS, KNIVES, HOME FURNISHINGS, PILLOWS, UMBRELLAS, ART PRINTS, TOYS, CARDS, LETTER OPENERS, AND COMPUTER ACCESSORIES, ALL INSPIRED BY A NOTED ARCHITECT, ADAPTED FROM DESIGNS OF A NOTED ARCHITECT, AND DESIGNED BY A NOTED ARCHITECT; RETAIL SHOPS FEATURING GOODS IN THE FIELD OF FURNITURE, CLOTHING, HOME FURNISHINGS, OBJECTS OF INTERIOR DESIGN, JEWELRY, RUGS, ORNAMENTS, BOOKS, LUMINARIES, VASES, COASTERS, METAL AND WOOD ART GLASS PANELS, PRINTS, LAMPS, LIGHTING FIXTURES, PICTURE FRAMES, EYEGLASS CASES, TIMEPIECES, PERSONAL ACCESSORIES, DISHWARE, SCULPTURE, CANDLES, TOWELS, PINS, ICE BUCKETS, BARWARE, MOBILES, URNS, KNIVES, HOME FURNISHINGS, PILLOWS, UMBRELLAS, ART PRINTS, TOYS, CARDS, LETTER OPENERS, AND COMPUTER ACCESSORIES, ALL INSPIRED BY A NOTED ARCHITECT, ADAPTED FROM DESIGNS OF A NOTED ARCHITECT, AND DESIGNED BY A NOTED ARCHITECT. AND MAIL, TELEPHONE AND FACSIMILE ORDER CATALOG SERVICES FEATURING GOODS IN THE FIELD OF FURNITURE, CLOTHING, HOME FURNISHINGS, OBJECTS OF INTERIOR DESIGN, JEWELRY, RUGS, ORNAMENTS, BOOKS, LUMINARIES, VASES, COASTERS, METAL AND WOOD ART GLASS PANELS, PRINTS, LAMPS, LIGHTING FIXTURES, PICTURE FRAMES, EYEGLASS CASES, TIMEPIECES, PERSONAL ACCESSORIES, DISHWARE, SCULPTURE, CANDLES, TOWELS, PINS, ICE BUCKETS, BARWARE, MOBILES, URNS, KNIVES, HOME FURNISHINGS, PILLOWS, UMBRELLAS, ART PRINTS, TOYS, CARDS, LETTER OPENERS, AND COMPUTER ACCESSORIES, ALL INSPIRED BY A NOTED ARCHITECT, ADAPTED FROM DESIGNS OF A NOTED ARCHITECT, AND DESIGNED BY A NOTED ARCHITECT, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 9-0-1997; IN COMMERCE 9-0-1997.

OWNER OF U.S. REG. NOS. 1,022,648, 1,901,709 AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COLLECTION", APART FROM THE MARK AS SHOWN.

SER. NO. 78-011,790, FILED 6-8-2000.

JOHN GARTNER, EXAMINING ATTORNEY

Int. Cl.: 42

Prior U.S. Cl.: 100

## United States Patent and Trademark Office

Reg. No. 1,871,719
Registered Jan. 3, 1995

## SERVICE MARK
### PRINCIPAL REGISTER

## FRANK LLOYD WRIGHT

FRANK LLOYD WRIGHT FOUNDATION, THE
(ARIZONA NON-PROFIT CORPORATION)
P.O. BOX 4430
SCOTTSDALE, AZ 85261

FOR: ARCHITECTURAL DESIGN SERV-
ICES; RETAIL STORE, DEALERSHIP AND
MAIL ORDER CATALOG SERVICES FEATUR-
ING GOODS DESIGNED BY FRANK LLOYD
WRIGHT; NAMELY, COFFEE SERVICES; TA-
BLEWARE; GLASSWARE; CANDLESTICKS;
FURNITURE; VASES; TABLE-TOP ACCESSO-
RIES; WALL COVERINGS; RUGS; FABRIC
PANELS, ART GLASS WINDOWS; LAMPS;

JEWELRY; LIGHTING FIXTURES; WALL
SCONCES, IN CLASS 42 (U.S. CL. 100).
FIRST USE 1-0-1953; IN COMMERCE
1-0-1953.
OWNER OF U.S. REG. NOS. 1,022,252, 1,631,974
AND OTHERS.
"FRANK LLOYD WRIGHT" IS A DE-
CEASED PERSON WHO WAS THE FOUNDER
OF APPLICANT.

SER. NO. 74-474,335, FILED 12-29-1993.

CINDI GREENBAUM, EXAMINING ATTOR-
NEY

Exhibit E

Marvin S. Gittes (MG-6112)
Timur E. Slonim (TS-0915)
**MINTZ, LEVIN, COHN, FERRIS,**
**GLOVSKY and POPEO, P.C.**
666 Third Avenue
New York, New York 10017
Tel.:    (212) 692-6800
Fax:    (212) 983-3115

*Attorneys For Hampton Court Jewelers Ltd. d/b/a Cellini Fine Jewelry*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

THE FRANK LLOYD WRIGHT FOUNDATION,  :
an Arizona not-for-profit corporation,  :

                           Plaintiff,  :

          vs.  :

HAMPTON COURT JEWELERS LTD. d/b/a  :
CELLINI FINE JEWELRY, a New York domestic  :
business corporation,  :

                        Cellini.  :

---------------------------------------------------------------x

Civil Action No.

ECF Case 08-cv-00422 (NRB)

**CELLINI'S ANSWER**

       Defendant Hampton Court Jewelers Ltd. d/b/a Cellini Fine Jewelry ("Cellini"), by its

attorneys Mintz Levin Cohn Ferris Glovsky and Popeo, P.C. hereby answers Plaintiff The Frank

Lloyd Wright Foundation's ("Foundation") Complaint (the "Complaint") as follows:

### NATURE OF THE ACTION

       1.   Cellini is without knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 1 of the Complaint, and therefore denies them.   Cellini

specifically denies the allegations contained in the last sentence of paragraph 1 of the

Complaint.

## PARTIES

2.  Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint, and therefore denies them.

3.  Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint, and therefore denies them.

4.  Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint, and therefore denies them.

5.  Cellini admits that it is a duly authorized New York corporation with its principal corporate offices at 301 Park Avenue, New York, New York.  Except as expressly admitted, Cellini denies the remaining allegations contained in paragraph 5.

6.  Cellini admits that it operates two retail stores engaged in the sale of fine jewelry and timepieces.  Except as expressly admitted, Cellini denies the remaining allegations contained in paragraph 6.

## JURISDICTION AND VENUE

7.  Cellini admits that the Foundation purports to base jurisdiction on 28 U.S.C. §§ 1331 and 1338(a) and (b).

8.  Cellini admits that the Foundation purports to base jurisdiction on 28 U.S.C. § 1367.

9.  Cellini admits that the Foundation purports to base jurisdiction on 28 U.S.C. § 1332(a).

10. Cellini admits the allegations contained in paragraph 10 of the Complaint.

## FACTS

11. Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint, and therefore denies them.

12. Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint, and therefore denies them.

13. Cellini admits the allegations contained in paragraph 13 of the Complaint.

14. Cellini admits that it is an authorized dealer of timepieces by Cartier, Piaget, and Ulysse Nardin. Except as expressly admitted, Cellini denies the remaining allegations contained in paragraph 14.

15. Cellini admits that it is a retailer of fine jewelry and also a retailer of timepieces, including those that are identified by third-party trademarks. Except as expressly admitted, Cellini denies the remaining allegations contained in paragraph 15.

16. Cellini admits a Certificate of Copyright Registration No. VA 135-504 is attached to the Complaint as Exhibit 1. Cellini also admits that the Foundation attached certain excerpts as Exhibit 2 to the Complaint and refers to the full work from which the attached materials were excerpted for the full content and legal effect thereof. As to all other allegations contained in paragraph 16, Cellini is without knowledge or information sufficient to form a belief as to their truth and therefore denies them.

17. Cellini admits a Certificate of Copyright Registration No. VA 272-687 is attached to the Complaint as Exhibit 3. Cellini also admits that the Foundation attached certain excerpts as Exhibit 4 to the Complaint and refers to the full work from which the attached materials were excerpted for the full content and legal effect thereof. As to all other allegations contained in paragraph 17, Cellini is without knowledge or information sufficient to form a belief as to their truth and therefore denies them.

18. Cellini denies the allegations contained in paragraph 18 of the Complaint

19. Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint, and therefore denies them.

31. Cellini denies the allegations contained in paragraph 31 of the Complaint.

32. Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the Complaint, and therefore denies them.

33. Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 of the Complaint, and therefore denies them.

34. Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 of the Complaint, and therefore denies them.

35. Cellini admits that front and back covers of a version of its Holiday 2006 catalog was attached to the Complaint as Exhibit 5 and refers to its full catalogs for their full content and legal effect thereof. Except as expressly admitted, Cellini denies the remaining allegations contained in paragraph 35 of the Complaint.

36. Cellini admits that different versions of its Fall 2006 catalogs were made available on Cellini's website www.cellinijewelers.com at certain points in time.  Except as expressly admitted, Cellini denies the remaining allegations contained in paragraph 36 of the Complaint.

37. Cellini denies the allegations contained in paragraph 37 of the Complaint.

38. Cellini denies the allegations contained in paragraph 38 of the Complaint.

39. Cellini denies the allegations contained in paragraph 39 of the Complaint.

40. Cellini denies the allegations contained in paragraph 40 of the Complaint

41. Cellini denies the allegations contained in paragraph 41 of the Complaint.

## COUNT I
(COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. §§ 101 et seq.)

42. Cellini repeats and incorporates by this reference each and every answer to each and every allegation set forth in Paragraphs 1 through 41, above.

43. Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43 of the Complaint, and therefore denies them.

44. Cellini submits that the allegations in paragraph 44 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 44 of the Complaint.

45. Cellini denies the allegations contained in paragraph 45 of the Complaint.

46. Cellini denies the allegations contained in paragraph 46 of the Complaint.

47. Cellini admits that the Foundation attached certain materials as Exhibit 6 to the Complaint. Except as expressly admitted, Cellini denies the remaining allegations contained in paragraph 47 of the Complaint.

48. Cellini submits that the allegations in paragraph 48 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 48 of the Complaint.

49. Cellini submits that the allegations in paragraph 49 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 49 of the Complaint.

50. Cellini submits that the allegations in paragraph 50 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 50 of the Complaint.

51. Cellini submits that the allegations in paragraph 51 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 51 of the Complaint.

52. Cellini submits that the allegations in paragraph 52 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 52 of the Complaint.

## COUNT II
### (TRADEMARK COUNTERFEITING AND TRADEMARK INFRINGEMENT PURSUANT TO 15 U.S.C. § 1114 et seq.)

53. Cellini repeats and incorporates by this reference each and every answer to each and every allegation set forth in Paragraphs 1 through 52, above.

54. Cellini admits that the Foundation attached certain trademark registrations certificates as Exhibits 7 - 12 to the Complaint. Except as expressly admitted, Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54 of the Complaint, and therefore denies them.

55. Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55 of the Complaint, and therefore denies them.

56. Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56 of the Complaint, and therefore denies them.

57. Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57 of the Complaint, and therefore denies them.

58. Cellini refers to the trademark registrations cited in paragraph 58 of the Complaint for their full content and legal effect thereof. Except as expressly admitted, Cellini denies the remaining allegations contained in paragraph 58 of the Complaint

59. Cellini denies the allegations contained in paragraph 59 of the Complaint.

60. Cellini denies the allegations contained in paragraph 60 of the Complaint.

61. Cellini submits that the allegations in paragraph 61 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 61 of the Complaint.

62. Cellini denies the allegations contained in paragraph 62 of the Complaint.

63. Cellini submits that the allegations in paragraph 63 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 63 of the Complaint.

64. Cellini denies the allegations contained in paragraph 64 of the Complaint.

65. Cellini submits that the allegations in paragraph 65 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 65 of the Complaint.

66. Cellini submits that the allegations in paragraph 66 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 66 of the Complaint.

67. Cellini submits that the allegations in paragraph 67 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 67 of the Complaint.

68. Cellini submits that the allegations in paragraph 68 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 68 of the Complaint.

69. Cellini submits that the allegations in paragraph 69 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 69 of the Complaint.

70. Cellini submits that the allegations in paragraph 70 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 70 of the Complaint.

71. Cellini submits that the allegations in paragraph 71 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 71 of the Complaint.

## COUNT III
### (TRADEMARK DILUTION PURSUANT TO 15 U.S.C. § 1125(c))

72. Cellini repeats and incorporates by this reference each and every answer to each and every allegation set forth in Paragraphs 1 though 71, above.

73. Cellini denies the allegations contained in paragraph 73 of the Complaint.

74. Cellini submits that the allegations in paragraph 74 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 74 of the Complaint.

75. Cellini denies the allegations contained in paragraph 75 of the Complaint.

76. Cellini denies the allegations contained in paragraph 76 of the Complaint.

77. Cellini denies the allegations contained in paragraph 77 of the Complaint.

78. Cellini submits that the allegations in paragraph 78 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 78 of the Complaint.

79. Cellini submits that the allegations in paragraph 79 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 79 of the Complaint.

80. Cellini denies the allegations contained in paragraph 80 of the Complaint.

81. Cellini submits that the allegations in paragraph 81 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 81 of the Complaint.

82. Cellini submits that the allegations in paragraph 82 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 82 of the Complaint.

<u>**COUNT IV**</u>
(UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, FALSE
ADVERTISING, AND FALSE ENDORSEMENT PURSUANT TO 15 U.S.C. § 1125(a))

83. Cellini repeats and incorporates by this reference each and every answer to each and every allegation set forth in Paragraphs 1 through 82, above.

84. Cellini submits that the allegations in paragraph 84 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 84 of the Complaint.

85. Cellini submits that the allegations in paragraph 85 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 85 of the Complaint.

86. Cellini denies the allegations contained in paragraph 86 of the Complaint.

87. Cellini denies the allegations contained in paragraph 87 of the Complaint.

88. Cellini submits that the allegations in paragraph 88 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 88 of the Complaint.

89. Cellini submits that the allegations in paragraph 89 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 89 of the Complaint.

90. Cellini submits that the allegations in paragraph 90 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 90 of the Complaint.

91. Cellini submits that the allegations in paragraph 91 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 91 of the Complaint.

<u>**COUNT V**</u>
(COMMON LAW UNFAIR COMPETITION-THE COPYRIGHTED WORKS)

92. Cellini repeats and incorporates by this reference each and every answer to each and every allegation set forth in Paragraphs 1 through 91, above.

93. Cellini denies the allegations contained in paragraph 93 of the Complaint.

94. Cellini denies the allegations contained in paragraph 94 of the Complaint.

95. Cellini denies the allegations contained in paragraph 95 of the Complaint.

96. Cellini submits that the allegations in paragraph 96 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 96 of the Complaint.

97. Cellini denies the allegations contained in paragraph 97 of the Complaint.

98. Cellini denies the allegations contained in paragraph 98 of the Complaint.

99. Cellini submits that the allegations in paragraph 99 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 99 of the Complaint.

100.    Cellini submits that the allegations in paragraph 100 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 100 of the Complaint.

## COUNT VI
### (COMMON LAW UNFAIR COMPETITION-THE MARKS)

101.  Cellini repeats and incorporates by this reference each and every answer to each and every allegation set forth in Paragraphs I through 100, above.

102.  Cellini denies the allegations contained in paragraph 102 of the Complaint.

103.  Cellini denies the allegations contained in paragraph 103 of the Complaint.

104.  Cellini denies the allegations contained in paragraph 104 of the Complaint.

105.  Cellini denies the allegations contained in paragraph 105 of the Complaint.

106.  Cellini submits that the allegations in paragraph 106 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 106 of the Complaint.

107.  Cellini submits that the allegations in paragraph 107 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 107 of the Complaint.

108.  Cellini submits that the allegations in paragraph 108 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 108 of the Complaint.

109.  Cellini submits that the allegations in paragraph 109 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 109 of the Complaint.

## COUNT VII
### (VIOLATION OF NEW YORK'S ANTI-DILUTION STATUTE
### NEW YORK GENERAL BUSINESS LAW §360-1)

110.  Cellini repeats and incorporates by this reference each and every answer to each and every allegation set forth in Paragraphs 1 through 109, above.

111.  Cellini denies the allegations contained in paragraph 111 of the Complaint.

112.  Cellini submits that the allegations in paragraph 112 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 112 of the Complaint.

113.  Cellini denies the allegations contained in paragraph 113 of the Complaint.

114.  Cellini submits that the allegations in paragraph 114 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 114 of the Complaint.

115.  Cellini submits that the allegations in paragraph 115 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 115 of the Complaint.

116.  Cellini submits that the allegations in paragraph 116 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 116 of the Complaint.

117.  Cellini submits that the allegations in paragraph 117 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 117 of the Complaint.

118.  Cellini submits that the allegations in paragraph 118 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 118 of the Complaint.

119.  Cellini submits that the allegations in paragraph 119 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 119 of the Complaint.

**COUNT VIII**
(UNLAWFUL DECEPTIVE ACTS AND PRACTICES
NEW YORK GENERAL BUSINESS LAW §349)

120. Cellini repeats and incorporates by this reference each and every answer to each and every allegation set forth in Paragraphs 1 through 119, above.

121. Cellini denies the allegations contained in paragraph 121 of the Complaint.

122. Cellini denies the allegations contained in paragraph 122 of the Complaint.

123. Cellini denies the allegations contained in paragraph 123 of the Complaint.

124. Cellini submits that the allegations in paragraph 124 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 124 of the Complaint.

125. Cellini submits that the allegations in paragraph 125 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 125 of the Complaint.

**COUNT IX**
(VIOLATION OF RIGHT OF PUBLICITY)

126. Cellini repeats and incorporates by this reference each and every answer to each and every allegation set forth in Paragraphs 1 through 125, above.

127. Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 127 of the Complaint, and therefore denies them.

128. Cellini is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 128 of the Complaint, and therefore denies them.

129. Cellini denies the allegations contained in paragraph 129 of the Complaint.

130. Cellini denies the allegations contained in paragraph 130 of the Complaint.

131. Cellini denies the allegations contained in paragraph 131 of the Complaint.

132.  Cellini denies the allegations contained in paragraph 132 of the Complaint.

133.  Cellini submits that the allegations in paragraph 133 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 133 of the Complaint.

134.  Cellini submits that the allegations in paragraph 134 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 134 of the Complaint.

135.  Cellini submits that the allegations in paragraph 135 of the Complaint contain only legal conclusions to which no response is necessary. To the extent a response is required, Cellini denies the allegations contained in paragraph 135 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

As to all claims for relief, Cellini alleges that even if the Foundation's allegations were true, which Cellini denies, the Foundation's conduct was such that the Foundation is barred by the doctrine of laches from pursuing its claims.

### SECOND AFFIRMATIVE DEFENSE

As to all claims for relief, Cellini alleges that its acts constitute fair use pursuant to 17 U.S.C. § 107 and 15 U.S.C. § 1115(b)(4).

### THIRD AFFIRMATIVE DEFENSE

As to all claims for relief, Cellini alleges that if the Foundation suffered any damages or losses as alleged in the Complaint, said damages or losses were caused wholly or in part by the acts, omissions, or fraud of third party entities, including, but not limited to, Bagués-Masriera S.A., and by reason thereof, any damages assessed against this Cellini should be reduced by an amount proportionate with the amount by which the acts, omissions, or fraud of any third party caused or contributed to said damages.

### FOURTH AFFIRMATIVE DEFENSE

As to Counts II, VIII, and IX, Cellini alleges that the Foundation fails to state a claim upon which relief can be granted.

### FIFTH AFFIRMATIVE DEFENSE

As to Count I of the Complaint for Copyright Infringement, the Foundation's claim is barred because the Foundation's claimed copyrights are invalid or otherwise unenforceable.

### SIXTH AFFIRMATIVE DEFENSE

As to Count I of the Complaint for Copyright Infringement, Cellini alleges that it was not aware and had no reason to believe that its acts may be deemed by others as copyright infringement.

## RELIEF REQUESTED

WHEREFORE, Cellini respectfully requests the following relief:

1.      A judgment in favor of Cellini denying the Foundation all relief requested in its

Complaint in this action and dismissing the Foundation's Complaint with prejudice;

2.      That Cellini be awarded its costs of suit, including reasonable attorney's fees;

and

3.      That the Court award Cellini such other and further relief as the Court deems

just and proper.

Dated:  New York, New York
        March 24, 2008

                                        MINTZ LEVIN COHN FERRIS
                                          GLOVSKY & POPEO, P.C.,

                                        By: /s/ MARVIN S. GITTES
                                        Marvin S. Gittes (MG-6112)
                                        Timur E. Slonim (TS-0915)
                                        666 Third Avenue
                                        New York, New York
                                        Tel.:  (212) 692-6800
                                        Fax:  (212) 983-3115
                                        E-mail:     msgittes@mintz.com
                                                    tslonim@mintz.com

                                        *Attorneys for Cellini*
                                        *Hampton Court Jewelers Ltd.*
                                        *d/b/a Cellini Fine Jewelry*

OF COUNSEL:

Geri L. Haight, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA  02111
Tel.:    (617) 542-6000
Fax:    (617) 542-2241

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on March 24, 2008, a copy of the **NOTICE OF**

**APPEARANCE,  RULE 7.1 DISCLOSURE STATEMENT and CELLINI'S ANSWER**

was served upon the following counsel of record by electronic mail:


**Anika Lewis**
**Michael Glenn Goldberg**
Pryor Cashman LLP
410 Park Avenue
New York, NY 10022
(212) 326-0129
Fax: (212) 798-6939
Email: <u>alewis@pryorcashman.com</u>


/s/ MARVIN S. GITTES    